**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE LEAR CORP. ERISA LITIGATION | MASTER FILE: 5:06-cv-11735 |
| | Judge Arthur J. Tarnow |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT,
CERTIFICATION OF SETTLEMENT CLASS AND
APPROVAL OF THE PLAN OF ALLOCATION**

Plaintiffs hereby move this Court, pursuant to FED. R. CIV. P. 23, for an Order: (i) granting final approval to the class action settlement in this action on the terms set forth in the Class Action Settlement Agreement ("Settlement Agreement"), filed with the Court on March 10, 2009 and attached to the accompanying Declaration of Edward W. Ciolko in Support of Motions for Final Approval of Settlement, Attorneys' Fees and Case Contribution Award ("Ciolko Declaration"); (ii) certifying the Class as defined in the Settlement Agreement; (iii) approving the Plan of Allocation in the form annexed to the Ciolko Declaration; and (iv) for such other and further relief as the Court may deem just and proper. A proposed Order and Final Judgment and Plan of Allocation to be signed by the Court are attached hereto.

The grounds for this Motion are set forth in the following papers contemporaneously filed herewith:

     A.    Memorandum of Law in Support of Plaintiffs' Motion for Final Approval

of Settlement, Certification of Settlement Class and Approval of the Plan of Allocation; and

     B.    Declarations of Plaintiffs' Counsel.[1]

Dated: June 15, 2009                   Respectfully submitted,

**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
By:          /s/ Edward W. Ciolko         
       Joseph H. Meltzer
       Edward W. Ciolko
       Mark K. Gyandoh
       James A. Maro
       280 King of Prussia Road
       Radnor, PA 19087
       Tel: (610) 667-7706
       Fax: 610-667-7056

*Lead Class Counsel for Plaintiffs*

Stephen Wasinger (P25963)
STEPHEN F. WASINGER PLC
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48073
Tel: (248) 554-6306
Fax: (248) 479-0391

*Liaison Counsel for Plaintiffs*

**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
32 East 57th Street
12th Floor
New York, New York 10022
Tel: (212) 421-6492
Fax: (212) 421-6553

**MOTLEY RICE, LLC**
Badge Humphries
28 Bridgeside Blvd.

---

[1] The Declarations of Plaintiffs' Counsel are filed as Exhibits F through L to the Declaration of Edward W. Ciolko, filed contemporaneously herewith.

Mt. Pleasant, SC 29464
Tel: (800) 768-4026
Fax: (843) 216-9450

*Plaintiffs' Executive Committee*

**KAHN SWICK & FOTI, LLC**
Kevin Oufnac
650 Poydras Street
Suite 2150
New Orleans, LA 70130

**LAW OFFICES OF STUART J. GUBER LLC**
Stuart Guber, Esq.
4565 Bastion Drive
Roswell, GA 30075

**GAINEY & MCKENNA**
Thomas J. McKenna
295 Madison Avenue
4th Floor
New York, New York 10017

**LAW OFFICE OF ALFRED YATES**
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, Pennsylvania 15219
Tel: (412) 391-5164
Fax: (412) 471-1033

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE LEAR CORP. ERISA LITIGATION | MASTER FILE: 2:06-cv-11735 Judge Arthur J. Tarnow |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS
AND APPROVAL OF THE PLAN OF ALLOCATION**

**BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP**
Joseph H. Meltzer
Edward W. Ciolko
Mark K. Gyandoh
James A. Maro
280 King of Prussia Road
Radnor, PA 19087
Tel: 610-667-7706
Tel: 610-667-7056

*Lead Class Counsel for Plaintiffs*

**MOTLEY RICE, LLC**
Badge Humphries
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel: (800) 768-4026
Fax: (843) 216-9450

**STEPHEN F. WASINGER PLC**
Stephen Wasinger (P25963)
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48073
Tel: 248-554-6306
Fax: 248-479-0391

*Liaison Counsel for Plaintiffs*

**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
32 East 57th Street - 12th Floor
New York, New York 10022
Tel: 212-421-6492
Fax: 212-421-6553

*Plaintiffs' Executive Committee*

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................1

II. BACKGROUND ..................................................................................................4

    A.  Description of the Litigation.................................................................4

    B.  Summary of the Litigation ....................................................................6

    C.  Discovery Undertaken ..........................................................................7

    D.  Settlement Negotiations ......................................................................10

    E.  The Proposed Settlement ....................................................................12

    F.  Effectuation of Notice and Objections to the Proposed Settlement....13

III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE
AND SHOULD BE APPROVED BY THE COURT ....................................14

    A.  The Law Favors and Encourages Settlements ....................................14

    B.  The Sixth Circuit Criteria for Settlement Approval............................15

        1.  Plaintiffs' Likelihood of Ultimate Success on the Merits Balanced
against the Amount and Form of Relief Offered in Settlement
Favors Approving the Settlement Agreement.........................................17

            (a)  Plaintiffs' Likelihood of Success .................................................17

            (b)  The Amount and Form of Relief Offered in Settlement .............23

        2.  The Complexity, Expense and Likely Duration of the Litigation
Favor Approving the Settlement Agreement ...........................................24

        3.  The Stage of the Proceedings and the Amount of Discovery
Completed Favor Approving the Settlement Agreement........................25

        4.  The Recommendation and Experience of Counsel Warrants
Approval of the Settlement Agreement ...................................................27

        5.  The Nature of the Negotiations Warrant Approval of the
Settlement Agreement..............................................................................31

        6.  The Relative Lack of Objections Raised by the Class Members
Favors Approval of the Settlement Agreement ......................................32

        7.  Public Interest .........................................................................................34

C.      Notice to Prospective Class Members was Adequate..........................................35

D.      The Plan of Allocation.........................................................................................37

IV.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ....................................39

A.      Rule 23(a)(1) – "Numerosity" ..............................................................................40

B.      Rule 23(a)(2) – "Commonality" ...........................................................................40

C.      Rule 23(a)(3) – "Typicality"................................................................................42

D.      Rule 23(a)(4) – "Adequacy of Representation"...................................................43

E.      The Class May Be Properly Certified under Rule 23(b)(1)...............................44

        1.      Certification under Rule 23(b)(1) is Proper.............................................44

                (a)     Subsection (b)(1)(B) ....................................................................45

                (b)     Subsection (b)(1)(A) ....................................................................46

F.      Plaintiffs Counsel Easily Meet the Requirements of Rule 23(g).......................47

V.      CONCLUSION.............................................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Abbott v. Lockheed Martin Corp.*,
No. 06-CV-0701, 2009 WL 969713 (S.D. Ill. Apr. 3, 2009)....................................................47

*In re ADC Telecomms., Inc. ERISA Litig.*,
No. 03-CV-2989, 2004 WL 1683144 (D. Minn. July 26, 2004) ............................................29

*Alvidres v. Countrywide Fin. Corp.*,
No. 07-CV-05810, 2008 WL 1766927 (C.D. Cal. Apr. 16, 2008) ..........................................46

*Am. Employers' Ins. v. King Res.*,
556 F.2d 471 (10th Cir. 1977) ................................................................................................33

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ............................................................................................42, 43

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................................................40

*In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*,
No. 02-CV-8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005).............................................29

*In re Aquila ERISA Litig.*,
237 F.R.D. 202 (W.D. Mo. 2006)......................................................................................46, 47

*Babcock v. Computer Assocs. Int'l.*,
212 F.R.D. 126 (E.D.N.Y. 2003)............................................................................................44

*Bailey v. Great Lakes Canning, Inc.*,
908 F.2d 38 (6th Cir. 1990) ....................................................................................................15

*Banyai v. Mazur*,
205 F.R.D. 160 (S.D.N.Y. 2002) ............................................................................................41

*In Re: Bear Stearns Cos, Inc. Sec., Derivative, and ERISA Litig.*,
No. 08-MD-1963, 2009 WL 50132 (S.D.N.Y. Dec. 29, 2008) ..............................................27

*In re Beazer Homes USA, Inc. ERISA Litig.*,
No. 07-CV-00952-RWS (N.D. Ga. April 30, 2007)................................................................28

*Bittinger v. Techumseh Prods. Co.*,
123 F.3d 877, 885 (6th Cir. 1997) ..........................................................................................42

*Bittinger v. Tecumseh Products Co.*,
123 F.3d 877 (6th Cir. 1997) ...........................................................................................40

*Brieger v. Tellabs*,
No. 06-CV-1882, 2009 WL 1565203 (N.D. Ill. June 1, 2009)..........................................22, 28

*Brieger v. Tellabs, Inc.*,
245 F.R.D. at 350 (N.D. Ill. 2007).........................................................................................42

*Brieger v. Tellabs, Inc.*,
473 F. Supp. 2d 878 (N.D. Ill. 2007) .....................................................................................29

*Brieger v. Tellabs, Inc.*,
No. 06-CV-01882 (N.D. Ill.) .................................................................................................28

*In re Bristol-Myers Squibb Co. ERISA Litig.*,
No. 02-CV-10129 (LAP) (S.D.N.Y.)......................................................................................30

*In re Broadwing ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ................................................................................. passim

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ......................................................................18, 25, 34, 40

*Carson v. AM Brands*,
450 U.S. 79 (1981)................................................................................................................17

*In re CIGNA Corp. ERISA Litig.*,
No. 03-CV-00714 (E.D. Pa. Aug. 2, 2004).............................................................................29

*In re CMS Energy ERISA Litig.*,
No. 02-CV-72834, 2006 WL 2109499 (E.D. Mich. June 27, 2006) ..................................4, 39

*In re Constellation Energy, Inc. ERISA Litig.*,
No. 08-CV-02662 (D. Md. Jan. 27. 2009) .............................................................................27

*Crawford v. TRW Automotive U.S. LLC*,
No. 06-14276, 2007 WL 851627 (E.D. Mich. Mar. 21, 2007) ...............................................40

*Crosby v. Bowater Ret. Plan for Salaried Employees of Great N. Paper*,
212 F.R.D. 350 (W.D. Mich. 2002) .......................................................................................41

*In re Delphi Corp. Sec., Derivative and "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ............................................................................... passim

*Detroit Police Officers Ass'n v. Young*,
920 F. Supp. 755 (E.D. Mich. 1995)......................................................................................15

*Detroit v. Grinnell,*
   495 F.2d 448 (2d Cir. 1974)..................................................................................18

*In re Diebold ERISA Litig.,*
   No. 06-CV-0170, 2008 WL 2225712 (N.D. Ohio May 28, 2008) .........................28

*DiFelice v. U.S. Airways, Inc.,*
   235 F.R.D. 70 (E.D. Va. 2006) ..............................................................................42

*DiFelice v. U.S. Airways, Inc.,*
   436 F. Supp. 2d 756 (E.D. Va. 2006), *affirmed,* 497 F.3d 410 (4th Cir. 2007).....................22

*Dresslar v. Wellpoint, Inc.,*
   No. 08-CV-00679-DFH-TAB (S.D. Ind. May 22, 2008) .......................................28

*In re Dun & Bradstreet Credit Services Customer Litig.,*
   130 F.R.D. 366 (S.D. Ohio 1990)..........................................................................31

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,*
   137 F.R.D. 240 (S.D. Ohio 1991) ..........................................................................15

*Evans v. Akers,*
   534 F.3d 65 (1st Cir. 2008)....................................................................................29

*Falk v. Amerada Hess Corp.,*
   No. 03-CV-2491 (D.N.J. May 10, 2004) ...............................................................29

*Feerer v. Amoco Prod. Co.,*
   No. 95-CV-0012, 1998 U.S. Dist. LEXIS 22248 (D.N.M. May 28, 1998) ............18

*Feret v. CoreStates Fin. Corp.,*
   No. 97-CV-6759, 1998 U.S. Dist. LEXIS 12734 (E.D. Pa. Aug. 18, 1998) ..........45

*In re First Am. Corp. ERISA Litig.,*
   No. 08-CV-01357, 2008 WL 5666637 (C.D. Cal. July 14, 2008)..........................28

*In re First Am. Corp. ERISA Litig.,*
   No. 08-CV-01357-JVS-RNB (C.D. Cal. Nov. 16, 2007) ........................................28

*Forbush v. J.C. Penney Co.,*
   994 F.2d 1101 (5th Cir. 1993) ...............................................................................40

*In re Ford Motor Co. ERISA Litig.,*
   No. 06-CV-11718, 2008 WL 5377955 (E.D. Mich. Dec. 22, 2008) ......................28

*Franks v. Kroger Co.,*
   649 F.2d 1216 (6th Cir.1981) ................................................................................14

*Gee v. UnumProvident*,
    No. 1:03-CV-147, Slip Op. (E.D. Tenn. Jan. 25, 2008) ...........................................4

*Gee v. UnumProvident Corp.*,
    No. 03-CV-0147, 2005 WL 534873 (E.D. Tenn. Jan. 13, 2005)............................................29

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)................................................................................42

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
    726 F.2d 1075 (6th Cir. 1984) .....................................................................17

*In re Global Crossing ERISA Litig.*,
    No. 02-CV-7453 (GEL) (S.D.N.Y. Feb. 14, 2005) ...................................................39

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................  passim

*Granada Investments, Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir.1992) ..................................................................17, 34

*Grosick v. Nat'l City Corp.*,
    No. 08-CV-00144-PAG (N.D. Ohio Jan. 17, 2008) ...................................................28

*Gruby v. Brady*,
    838 F. Supp. 820 (S.D.N.Y. 1993) ................................................................46

*Hainey v. Parrott*,
    No. 02-CV-733, 2007 WL 2752375 (S.D. Ohio Sept. 20, 2007) ......................................32

*Hansberry v. Lee*,
    311 U.S. 32 (1940)...............................................................................43

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ....................................................................19

*Hill v. BellSouth Corp.*,
    313 F. Supp. 2d 1361 (N.D. Ga. 2004) ............................................................29

*In re Honeywell ERISA Litig.*,
    No. 03-CV-01214 (D.N.J. July 19, 2005)...........................................................37

*In re Honeywell ERISA Litig.*,
    No. 03-CV-1214 (D.N.J. Oct. 22, 2004)..........................................................28, 29

*In re Honeywell Int'l ERISA Litig.*,
    No. 03-CV-1214 (DRD) (D.N.J. 2004) .............................................................30

*In re Huntington Bancshares Inc. ERISA Litig.*,
  No. 08-CV-0165, 2009 WL 330308 (S.D. Ohio Feb. 9, 2009) ...............................21

*In re Ikon Office Solutions*,
  191 F.R.D. 457 (E.D. Pa. 2000)..........................................................42, 44, 45, 47

*IUE-CWA v. General Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) ...............................................................27, 31

*In re JDS Uniphase Corp. ERISA Litig.*,
  No. 03-CV-4743, 2005 WL 1662131 (N.D. Cal. July 14, 2005)...........................29

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008)...........................................................41, 42, 46

*Kane v. United Indep. Union Welfare Fund*,
  No. 97-CV-1505, 1998 WL 78985 (E.D. Pa. Feb. 24, 1998) ...............................45

*Kirschbaum v. Reliant Energy, Inc.*,
  526 F.3d 243 (5th Cir. 2008) ..........................................................................21

*Koch v. Dwyer*,
  No. 98-CV-5519, 2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 23, 2001) ...........................46

*Koch v. Loral Space & Commc'ns Ltd.*,
  No. 03-CV-9729 (S.D.N.Y. Dec. 8, 2003) .......................................................28

*Kolar v. Rite Aid Corp.*,
  No. 01-CV-1209, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003)...........................47

*Landgraff v. Columbia Healthcare Corp.*
  No. 98-CV-0090, 2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000),
  *affirmed,* 30 Fed. Appx. 366 (6th Cir. 2002) ................................................22

*In re Lear ERISA Litig.*,
  No. 06-CV-11735 (E.D. Mich. Apr. 10, 2006) ............................................28, 29

*Lessard v. City of Allen Park*,
  372 F.Supp.2d 1007 (E.D. Mich. 2005)............................................................15

*Levell v. Monsanto Research Corp.*,
  191 F.R.D. 543 (S.D. Ohio 2000) ..................................................................25

*Lewis et al. v. El Paso Corp.*,
  No. H-02-4860 (S.D. Tex) ...........................................................................30

*In re Lincoln Nat'l Corp. ERISA Litig.*,
  No. 08-CV-5740 (E.D. Pa. June 4, 2009) ........................................................27

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002) ........................................................................33, 34

*Manners v. Am. General Life Ins. Co.*,
    No. 98-CV-0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ......................17

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
    No. 05-CV-1151, 2009 WL 331426 (D.N.J. Feb. 10, 2009) ....................................45

*In re: Merck & Co., Inc. Sec. Derivative & ERISA Litig.*,
    No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006) ...................................29

*Nelson v. IPALCO Enterprises, Inc.*.
    480 F. Supp. 2d 1061 (S.D. Ind. 2007), *affirmed*, 512 F.3d 347 (7th Cir. 2008) ...................22

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006) .............................................................................25

*Nowak v. Ford Motor Co.*,
    240 F.R.D. 355 (E.D. Mich. 2006) ..........................................................................28

*Oppenlander v. Standard Oil Co.*,
    64 F.R.D. 597 (D. Colo. 1974) ................................................................................24

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................31

*In re: Pixelplus Co., Ltd.*,
    No. 06-cv-02951 (S.D.N.Y.) .....................................................................................30

*In re Polaroid ERISA Litig.*,
    362 F. Supp. 2d 461 (S.D.N.Y. 2005) ......................................................................29

*In re Providian Fin. Corp. ERISA Litig.*
    No. 01-CV-05027, 2002 WL 31785044 (N.D. Cal. Nov. 14, 2002) ......................39

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    148 F.3d 283 (3d Cir. 1998) .....................................................................................25

*Rankin v. Rots*,
    No. 02-CV-71045, 2006 WL 1876538 (E.D. Mich. June 27, 2006) ............................. passim

*In re Raytheon ERISA Litig.*,
    No. 03-CV-10940-RGS (D. Mass. Mar. 19, 2003) ..................................................28

*Reinhart v. Lucent Tech., Inc.*,
    No. 01-CV-3491 (D.N.J. Mar. 15, 2004) ................................................................39

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992)............................................................................17

*Riccio v. Huntington Bancshares Inc.*
   No. 08-CV-00165-GLF-TPK (S.D. Ohio Feb. 20, 2008)...........................................28

*Rogers v. Baxter Int'l Inc.*,
   No. 04-CV-6476, 2006 WL 794734 (N.D. Ill. Mar. 22, 2006)....................................45

*In re Schering Plough Corp.*,
   No. 03-CV-1204, 2008 WL 4510039 (D.N.J. Sept. 30, 2008) ...................20, 28, 45

*In re Schering-Plough Corp. ERISA Litig.*,
   420 F.3d 231 (3d Cir. 2005)........................................................................................29

*In re Sears, Roebuck & Co. ERISA Litig.*,
   No. 02-CV-8324, 2004 WL 407007 (N.D. Ill. March 3, 2004)....................................29

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) ......................................................................................43

*Shirk v. Fifth Third Bancorp*,
   No. 05-CV-049, 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) ................18, 41, 45

*In re: SLM Corp. ERISA Litig.*,
   No. 08-CV-4334 (S.D.N.Y. Sept. 30, 2008).............................................................27

*In re Southern Ohio Correctional Facility*,
   173 F.R.D. 205 (S.D. Ohio 1997)..............................................................................15

*Sprague v. G.M. Corp.*,
   133 F.3d 388 (6th Cir. 1998) ...............................................................................40, 42

*Stotts v. Memphis Fire Department*,
   679 F.2d 541 (6th Cir. 1982), *cert. granted sub nom, Firefighter's Local Union No.*
   *1784 v. Stotts*, 462 U.S. 1105 (1983) ...............................................................15, 34

*Summers v. State Street*,
   453 F.3d 404 (7th Cir. 2006) ...............................................................................20, 21

*In re Syncor ERISA Litig.*,
   227 F.R.D. 338 (C.D. Cal. 2005)..........................................................................45, 46

*In re Syncor ERISA Litig.*,
   351 F. Supp. 2d 970 (C.D. Cal. 2004) ......................................................................29

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ...................................................................................29

*Tatum v. R.J. Reynolds Tobacco Co.*,
    254 F.R.D. 59 (M.D.N.C. 2008) ................................................................41, 42

*In re Telectronics Pacing Systems, Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ..........................................14, 15, 23, 24

*U.S. v. Trucking Employers, Inc.*,
    561 F.2d 313 (D.C. Cir. 1977) ..............................................................................23

*UAW v. General Motors Corp.*,
    No. 05-CV-73991, 2006 WL 891151 (E.D. Mich. March 31, 2006) ............... passim

*UAW v. GMC*,
    497 F.3d 615 (6th Cir. 2007) ................................................................................35

*In re Westar Energy Inc. ERISA Litig.*,
    No. 03-CV-4032 (D. Kan. Mar. 7, 2003)............................................................28

*Whitford v. First Nationwide Bank*,
    147 F.R.D. 135 (W.D. Ky. 1992)....................................................................32, 35

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ........................................................................ passim

*Woods v. Southern Co.*,
    396 F. Supp. 2d 1351 (N.D. Ga. 2005) ................................................................29

*In re WorldCom, Inc. ERISA Litig.*,
    No. 02-CV-4826, 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. Oct. 18, 2004) .....................37, 46

*In re Xethanol Corp. Sec. Lit.*,
    No. 06-10234 (S.D.N.Y.)....................................................................................30

### FEDERAL STATUTES

29 U.S.C. § 1104(c) ..........................................................................................................19

29 U.S.C. § 1132(a)(2)..........................................................................................5, 29, 42, 45

### RULES

FED. R. CIV. P. 23 ..................................................................................................... passim

FED. R. CIV. P. 24(A)(2) and 24(B)..................................................................................34

FED R. CIV. P. 26(a) ............................................................................................................8

FED. R. CIV. P. 30(b)(2) and (6) ....................................................................................9, 10

REGULATIONS

29 C.F.R. § 2550.404(c)-1(a)(1) ....................................................................................................19

## I.   INTRODUCTION

Plaintiffs Michael Malloy, John Blecha, Boyd White, and Deborah Berry, ("Named Plaintiffs" or "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement, Certification of Settlement Class and Approval of the Plan of Allocation.[1]   Plaintiffs have contemporaneously filed herewith the Declaration of Edward W. Ciolko in Support of Plaintiffs' Motion for Final Approval of Settlement, Certification of Settlement Class and the Approval of the Plan of Allocation, and Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Award (the "Ciolko Declaration" or "Ciolko Decl.").   The Ciolko Declaration sets forth facts of record pertaining to this Action and the proposed Settlement.

After years of hard-fought litigation the Plaintiffs and Defendants[2] to this matter executed the proposed Settlement Agreement[3] which provides for a cash payment of $5.25 million to the Lear Corporation Salaried Retirement Savings Plan ("Salaried RSP"), the Lear Corporation Hourly Retirement Savings Plan ("Hourly RSP"), and the Lear Corporation Hourly 401(k) Savings Plan ("Hourly 401(k)") (collectively, the "Plans" or "Plan").

---

[1] Plaintiffs have also filed concurrently herewith the Memorandum of Law in Support of Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Award ("Fee Memorandum").   The Fee Memorandum contains information pertinent to the Settlement and is incorporated in full with the instant Memorandum of Law.

[2] Defendants are Lear Corporation, the Employee Benefits Committee, and the individual Defendants Robert E. Rossiter, James H. Vandenberghe, Conrad L. Mallett, Jr., Anne K. Bingaman, Janet A. Stern, Henry D.G. Wallace, Richard R. Wallman, Larry W. McCurdy, Roy E. Parrott, David P. Spalding, David E. Fry, Roger Jackson, Michael Miller, Shari Burgess, Dan Ninivaggi, Bill Dircks, David C. Wajsgras, William McLaughlin, and Thomas Polera.

[3] The Class Action Settlement Agreement (the "Settlement Agreement"), attached as Exhibit A to the Ciolko Declaration (defined below), itself has several exhibits, including the proposed forms of Notice and proposed forms of the Preliminary and Final Approval Orders.   The provisions of the Settlement Agreement, including all definitions and defined terms, are incorporated by reference herein.   Thus, all capitalized terms not otherwise defined in this Memorandum of Law shall have the same meaning as ascribed to them in the Settlement Agreement.

Plaintiffs fought and negotiated vigorously for this Settlement, ultimately achieving a recovery through settlement that is exceptional particularly in light of the potential damages and litigation risks present in this case.  There is no doubt that lawsuits of this type brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") face significant risks as they involve complex and still evolving law.  As detailed below, risks include the very real possibility that, despite their best efforts, the Class would have received *less* monetary damages or even nothing at all if this case proceeded through trial.   In fact, to the best of Class Counsel's knowledge, no plaintiff has ever succeeded at trial in any ERISA company-stock class actions alleging breach of fiduciary duties.  Additionally, Defendants took significant corrective steps to protect the Plan and its participants by beginning divestment of Lear common stock in the Plan.  In sum, Plaintiffs are proud of the Settlement achieved and believe this to be an excellent result.

As discussed below, the $5.25 million was only achieved after extensive negotiations between the Parties with the assistance of an experienced mediator and with the assistance of this Court.  After reaching the proposed Settlement, Plaintiffs subsequently presented it to the Court for approval on March 23, 2009.  By Order dated March 26, 2009, this Court preliminarily approved the Settlement Agreement.  *See* Docket No. 93 ("Preliminary Approval Order").  In the Preliminary Approval Order, the Court also preliminarily certified the Settlement Class and appointed Deborah Berry, Michael Malloy and Boyd White as Class Representatives of the Settlement Class.

Under the governing standards for evaluating class action settlements in this Circuit, this Settlement is fair, reasonable and adequate, and Plaintiffs respectfully ask that the Court approve

it.[4]  The Settlement represents an outstanding recovery in light of the significant hurdles facing Plaintiffs and the proposed Class.   Moreover, as discussed below, an independent fiduciary, Fiduciary Counselors Inc. ("Fiduciary Counselors"), was retained by Lear (acting in its corporate capacity and as the named fiduciary of the Plan) and is reviewing this Settlement.   From all indications Fiduciary Counselors is likely to approve the Settlement.[5]

The Settlement was achieved only after the merits of Plaintiffs' legal claims, and the defenses to those claims, were thoroughly investigated and vetted.   The Parties agreed to the Settlement, initially with the assistance of an experienced mediator, and subsequently with the assistance of this Court.   As detailed below, the Parties have fully complied with the terms of the Preliminary Approval Order.   After mailing the approved form of Notice to 17,407 Class Members and publishing the Summary Notice in the *USA Today*, Class Counsel received *only three* objections to the proposed Settlement.   One of the objections was in fact only with regard to Class Counsel's application for a fee award, not the Settlement itself.   As discussed in more detail below, all three objections fail to specify any meaningful basis for objection to the terms of the Settlement and therefore do not merit serious consideration.

Accordingly, Plaintiffs respectfully request that this Court enter the proposed Order and Final Judgment granting final approval of the Settlement Agreement, approving the Plan of

---

[4] Plaintiffs set forth in this Memorandum as well as in other Settlement documents various factors (factual, legal and financial) that support the conclusion that the Settlement achieved in this matter is fair, reasonable, and adequate.   Plaintiffs are not, by entering into the Settlement, admitting to the ultimate truth or falsity of any of the factual, legal or financial factors or conclusions discussed in this Memorandum that favor Defendants; rather, Plaintiffs are merely acknowledging, for settlement purposes only, that the Court could find such factors exist and provide a sound basis for approval of the Settlement.   Accordingly, none of the statements in this Memorandum and other Settlement documents constitutes admissions by or evidence against any party to this Action or in any other action.

[5] Plaintiffs hope to present Fiduciary Counselors' report at the time of the Fairness Hearing.   If Fiduciary Counselors has not issued a report at the time of the Final Fairness Hearing Plaintiffs will provide a supplemental submission to the Court detailing the results of Fiduciary Counselors' review of the Settlement once it is completed.

Allocation, and certifying a Settlement Class comprised of all persons, excluding Defendants, who were participants and/or beneficiaries in the Plans, and whose accounts included investments in Lear common stock or common stock fund units ("Lear Stock Fund" or "Stock Fund") at any time during the period October 21, 2004 through March 6, 2009 (the "Class Period").[6]

## II.    BACKGROUND

### A.    Description of the Litigation[7]

This litigation commenced on April 10, 2006, when Named Plaintiff Michael Malloy filed a class action complaint asserting breach of fiduciary duty claims against Defendants under ERISA. Named Plaintiff John Blecha filed a complaint averring similar allegations on May 10, 2006. Named Plaintiffs Boyd White and Deborah Berry filed related actions on May 12, 2006 and June 15, 2006, respectively. On June 30, 2006, this Court entered a Case Management Order consolidating the four actions and directing Named Plaintiffs to file a consolidated complaint. *See* Docket No. 8. Named Plaintiffs filed the Consolidated Amended Class Action Complaint on September 20, 2006. *See* Docket No. 11 (the "Complaint"). The detailed allegations of the Complaint were developed following continued and thorough investigation of Named Plaintiffs' claims, including a review of Plan-related documents, informal discovery, and

---

[6] The Complaint alleged a class period extending to the "present." However, as part of the Settlement Agreement, the Class Period is now defined as October 21, 2004 through March 6, 2009, the Agreement Execution Date, as defined in Section 1.2 of the Settlement Agreement.

[7] Plaintiffs and the proposed class here are factual analogues to plaintiffs and settlement-certified classes in several ERISA breach of fiduciary duty class actions where district courts in this circuit approved the parties' respective settlement agreements. *See In re Delphi Corp. Sec., Derivative and "ERISA" Litig.,* 248 F.R.D. 483, 496 (E.D. Mich. 2008); *In re Broadwing ERISA Litig.,* 252 F.R.D. 369 (S.D. Ohio 2006); *Rankin v. Rots,* No 02-CV-71045, 2006 WL 1876538 (E.D. Mich. June 27, 2006); *In re CMS Energy ERISA Litig.,* No. 02-CV-72834, 2006 WL 2109499 (E.D. Mich. June 27, 2006); *Gee v. UnumProvident,* No. 1:03-CV-147, Slip Op. (E.D. Tenn. Jan. 25, 2008) (Order and Final Judgment) (attached as Exhibit N to Ciolko Dec..)

documents produced by Defendants regarding the Plans and the fiduciaries of the Plans.  Counsel for Plaintiffs also analyzed specific corporate transactions involving Lear, reviewed Lear's federal and state regulatory filings, and conducted interviews of witnesses and Plan participants.

Named Plaintiffs brought their claims pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), on behalf of themselves and participants in the Plans during the period of October 21, 2004 to the present, and whose accounts included investments in the Lear Stock Fund, a fund containing primarily Lear common stock.  The Complaint asserted four claims against the Defendants and/or various subsets of the Defendants pursuant to ERISA § 409.  These claims were the (i) failure to prudently and loyally manage Plan assets, (ii) failure to monitor appointed Plan fiduciaries and provide them with accurate information, (iii) failure to provide complete and accurate information to Plan participants, and (iv) failure to avoid conflicts of interest, in violation of ERISA.  As set forth in greater detail in the Complaint, Plaintiffs alleged that Defendants, who were fiduciaries of the Plans, breached their duties to the Plans, Plaintiffs and the Plans' participants in violation of ERISA (and related Department of Labor ("DOL") regulations) with regard to the Plans' continued, significant investment in Lear common stock.

The Complaint alleges that Defendants breached their fiduciary duties by, *inter alia*, selecting and maintaining the Stock Fund as a Plan investment alternative; permitting the Plans to purchase and hold shares of the Lear common stock; and permitting the Stock Fund to purchase and hold shares of Lear common stock when it was imprudent to do so.  The heavy investment in Lear common stock was imprudent given the numerous material risks faced by the Company, which Defendants either knew or should have been aware.  These risks included, *inter alia*, the collapse of Lear's business model, increased pricing pressure from both the Company's suppliers and customers, the overall decline in the automotive manufacturing market, and Lear's

receipt of Securities and Exchange Commission ("SEC") subpoenas regarding the Company's accounting practices for transactions with General Motors ("GM").  According to Named Plaintiffs, and the allegations in the Complaint, such risks invariably caused Lear common stock to become an imprudent investment alternative for the Plans.

The Named Plaintiffs further alleged that Defendants failed to appropriately monitor the other Defendant-fiduciaries; provided incomplete and inaccurate information to the Plans' participants regarding the prudence of investing in Lear common stock; and certain Defendants failed to act solely in the interest of the Plans' participants.

### B.      Summary of Litigation

Defendants vigorously contested this complex litigation from the outset and were represented by highly reputable lawyers who aggressively defended Plaintiffs' claims and immediately sought to have the Court dismiss the Complaint.  On November 20, 2006 Defendants filed their Motion to Dismiss the Complaint (*see* Docket No. 14 ("Motion to Dismiss")) and supported their Motion to Dismiss with arguments which, if successful, could have dramatically limited the scope of Plaintiffs' claims or led to outright dismissal of the Action.  Defendants asserted that:  (1) they could not be held liable for continuing to offer Lear common stock as an investment alternative and investing Plan assets in Lear common stock; (2) Plaintiffs failed to overcome the presumption that Defendants' acted prudently by deciding to offer Lear common stock as an investment alternative and to invest assets in Lear common stock; (3) Plaintiffs' "failure to monitor" claim failed because Plaintiffs did not allege that Defendants made any affirmative misrepresentations with respect to the Plans or their investments; (4) Defendants had no duty under ERISA to disclose actual or potential events that could affect the

value of the Company's stock; and (5) Plaintiffs failed to state a claim for Defendants' failure to avoid conflicts of interests.

Following full briefing and a contentious hearing on the Motion to Dismiss, the Court rejected Defendants' arguments and entered an Order on June 28, 2007, upholding the sufficiency of the Complaint as to all claims. *See* Docket No. 28. On August 2, 2007, Defendants filed their Answer to the Complaint (*see* Docket No. 33) and generally denied each of Plaintiffs' claims and asserted numerous affirmative defenses.

On March 27, 2008, Plaintiffs filed their Motion for Class Certification. *See* Docket No. 45 ("Motion to Certify"). Plaintiffs' Motion to Certify was still pending when the Settlement Agreement was reached. Defendants had not yet filed a response to Plaintiffs' Motion to Certify at the time of Settlement.

### C.    Discovery Undertaken

In addition to Defendants' informal production of documents prior to the filing of the Complaint, in the fall of 2007, after Defendants answered the Complaint, Defendants produced certain information related to the measure of losses alleged by Plaintiffs, including information concerning the Plans' holdings and transactions in Lear common stock during the Class Period. Plaintiffs sought this information to assist them in establishing their claims, as well as for purposes of formulating a settlement demand. In fact, at the hearing on the Motion to Dismiss, the Court encouraged the parties to attempt to settle the Action in a way that made sense for both sides:

> I'm trying to figure out if there's a way to resolve it now that would make your clients whole and save your clients and Lear's clients – or Lear from the cost of a fairly large piece of litigation.

*In re Lear Corp. ERISA Litig.*, Tr. of Motion to Dismiss Consolidated Complaint Hearing, June 27, 2007 (E.D. Mich.) (Minute Entry).

After that hearing, Plaintiffs continued to gather evidence to support their claims.[8]  The parties exchanged initial discovery disclosures pursuant to FED R. CIV. P. 26(a) and engaged in discovery regarding class certification issues and further discovery concerning the Plans and merits-related issues.

In addition, from early December 2007 through mid-February 2008, the Parties engaged in motion practice concerning the Company's proposed implementation of a new document retention policy that threatened to destroy millions of documents.  At the Court's suggestion, counsel for the Parties negotiated a resolution to modify Lear's document retention and destruction policy without jeopardizing documents that could be relevant to the claims or defenses in the Action.  Eventually, as a result of Plaintiffs' efforts, the Parties agreed that Defendants would delay implementing their new document retention policy until after the close of fact discovery, effectively protecting millions of pages of documents from immediate destruction.

After concluding those efforts, Plaintiffs moved diligently and served Defendants with written discovery, served non-party subpoenas, and scheduled depositions of Defendants and non-parties.  Specifically, on March 13, 2008, Plaintiffs served Defendants with two sets of document requests.  The first set of document requests concerned additional Plan-related or ERISA-specific documents.  The second set of document requests addressed the allegations of the Complaint dealing with the underlying factual predicate for Plaintiffs' imprudence claim – the alleged corporate malfeasance and mismanagement of Lear.  Further, on March 20, 2008, Plaintiffs served Interrogatories to Defendants Lear, the Director Defendants and the Employee

---

[8] Defendants' discovery efforts commenced as well.  On January 8, 2008, Defendants served their First Set of Interrogatories to Plaintiffs and First Request for Production of Documents.

Benefits Committee.  During this time, Plaintiffs also responded with Answers and Objections to Defendants' Requests for Production of Documents and First Set of Interrogatories.  Plaintiffs, with the aid of Counsel, spent significant time in responding to these extensive Interrogatories. On March 31, 2008, Defendants filed a motion to compel Plaintiffs to respond fully to their written discovery requests which Plaintiffs vigorously contested.  *See* Docket No. 46 ("Motion to Compel"). [9]

In April, Plaintiffs began to serve Notices of Deposition on Defendants.  On April 11, 2008, Plaintiffs served Notices of Deposition on Defendants David Wajsgras, Cynthia Stolber and William Dircks.  On April 14, 2008, Plaintiffs served Notices of Depositions on Defendants Shari Burgess and William McLaughlin.  As discussed below, the Parties agreed to stay the Action to allow the Parties to participate in mediation.  Following the temporary stay of discovery, Plaintiffs continued their discovery efforts by serving Amended Notices of Depositions on the Defendants identified above and further served Notices of Deposition on Defendants Roger Jackson, Robert Rossiter, Michael Miller, Thomas Polera, Janet Stern, Conrad Mallett, David Fry and Larry McCurdy.

Throughout the discovery process, Plaintiffs also served subpoenas *duces tecum* on the Plans' two trustees, Reliance Trust Company and Northern Trust Company, as well as upon the auditor for Lear and the Plans, Ernst & Young LLP.  Plaintiffs also served FED. R. CIV. P. 30(b)(2) and (6) Notices on Lear's principal customers: Ford Motor Company ("Ford"), GM, and Chrysler, LLC (formerly known as DaimlerChrysler Corp.) as well as upon certain of Lear's

---

[9] On June 5, 2008, this Court granted in part and denied in part Defendants' Motion to Compel. *See* Docket No. 58 ("June 5, 2008 Order"). Pursuant to the June 5, 2008 Order, Plaintiffs prepared and served supplemental responses to Defendants' Interrogatories.

suppliers[10] in an effort to obtain information supporting Plaintiffs' claims.  In late June 2008,

counsel for Defendants deposed all four Named Plaintiffs.  Class Counsel along with Named

Plaintiffs prepared extensively for these depositions.

During the course of discovery, tens of thousands of pages of documents were produced

by Defendants which Plaintiffs, through their Counsel, reviewed.  Moreover, Class Counsel

extensively reviewed publicly available documents, hundreds of pages of a Plan documents,

including master Plan documents, Summary Plan Descriptions, and Summary Material

Modifications, documents filed with the SEC and publicly available analysts reports.  All of this

information served to augment the significant amount of information Plaintiffs had accumulated

from their own investigation.  Plaintiffs' Counsel also drew on their extensive knowledge of

ERISA law with respect to fiduciary duties relating to the investment of company stock in

defined contribution plans to plead the case as strongly as possible, including with reference to

the factual results of their investigation.

### D.      Settlement Negotiations

From time to time during the litigation and throughout the Parties' discovery efforts,

counsel for the Parties explored the idea of whether an amicable resolution of Plaintiffs' claims

could be reached.  As the Parties contemplated a possible settlement, both sides eventually

agreed that utilizing a neutral third party with significant experience resolving complex, multi-

party class actions would be constructive.  In April 2008, the Parties ultimately decided to utilize

the services of Gary V. McGowan, Esq. of McGowan Dispute Resolution to mediate the case.

On April 28, 2008, this Court executed the Parties' Stipulation and Order Staying Case Pending

---

[10] For example, Plaintiffs served FED. R. CIV. P. 30(b)(2) and (6) Notices on Canadian General Tower, Shawmut Mills, Guilford, Sandusky Athol International, General Electric Company, Woodbridge Foam Corporation, Foamex International, Inc., and Canadian General – Tower Limited.

Mediation. *See* Docket No. 53. On May 12, 2008, the Parties attended a full-day mediation session with Mr. McGowan in Chicago. In preparation for this mediation, Plaintiffs engaged in time-consuming research, damage analyses and litigation review, culminating in the drafting and submission of a comprehensive mediation memorandum which included a thorough analysis of Plaintiffs' claims, potential losses and insurance coverage issues. Plaintiffs' mediation memorandum supported Plaintiffs' allegations by referring to the evidence that Plaintiffs had amassed against Defendants. Defendants also submitted a detailed mediation memorandum which presented their defenses to Plaintiffs' claims, supported by evidence.

The mediation before Mr. McGowan was contested but productive, especially because it offered the parties a chance to share their views of the evidence and highlight the strengths and weaknesses of each claim and defense. Although settlement was not reached at or immediately following the mediation session, the Parties continued settlement discussions, with the further assistance of Mr. McGowan for several months. At all times, counsel for the Parties engaged in spirited negotiations and kept the Court and the mediator informed of their progress.

After the parties made further progress, this Court held a settlement conference on July 9, 2008. During that conference, with the Court's assistance, the Parties made great strides towards reaching an agreement in principle to settle the Action in the amount of $5,250,000.00. Following this settlement conference, and the Court's recommendation, the Parties continued their negotiations regarding the specific terms of the Settlement Agreement, the scope of the release, the definition of the class, and other important and necessary terms of the proposed Settlement and eventually agreed on the principal terms of a proposed Settlement. Lastly, counsel for the Parties engaged in multiple exchanges of information and dialogue with Fiduciary Counselors regarding the terms of the Settlement and Class Counsel's fee request.

The negotiations in this matter were undoubtedly at arm's length, intense and complex with both sides strenuously arguing their respective positions.   The result is the Settlement Agreement that the Parties now present to the Court for final approval.

**E.      The Proposed Settlement**

As noted above, the terms of the Settlement are memorialized in the Settlement Agreement, a copy of which is attached as Exhibit A to the accompanying Ciolko Declaration and was filed together with the Plaintiffs' Motion for Preliminary Approval of Settlement, Conditional Certification of Class for Settlement Purposes, and Approval of Notice Plan ("Motion for Preliminary Approval").

The Settlement Agreement provides that Defendants shall pay the sum of $5.25 million into a Settlement Fund.  The Net Proceeds of the Settlement Fund (after deductions of attorneys' fees, expenses and any Case Contribution Award as well as the expenses to administer the Settlement) will be allocated among the Settlement Class in accordance with the Plan of Allocation as set forth in the Settlement Agreement and Exhibit C thereto, and as described in this Memorandum of Law.

Pursuant to the Settlement, the Plans and the Settlement Class will release all claims in this Action, as well as "any and all claims and causes of action that could have been brought against any Defendants in the Action, and claims that would be barred by principles of *res judicata* had the claims asserted in the Complaint been fully litigated and resulted in a Final judgment or order."  *See* Settlement Agreement, Section 3.2.

Furthermore, pursuant to the Settlement Agreement, an independent fiduciary, Fiduciary Counselors has been retained to evaluate the fairness and adequacy of the Settlement.  Class Counsel anticipates Fiduciary Counselors will approve the Settlement.

### F.      Effectuation of Notice and Objections to the Proposed Settlement

On March 10, 2009, Plaintiffs filed their Motion for Preliminary Approval with exhibits which included proposed forms of individual and publication notice.  The Court preliminarily approved the Settlement in the aforementioned Preliminary Approval Order of March 26, 2009. The Preliminary Approval Order established (1) a schedule for dissemination of the approved forms of notice and (2) the form, method and timing of any objection(s) to the Settlement and its terms.  Further, June 22, 2009 was set as the date for the Final Fairness Hearing.

At the Final Fairness Hearing, the Court will finally determine, among other issues, whether (1) the proposed class of Plan participants should be certified for settlement; (2) the settlement is fair, reasonable and adequate; (3) Plaintiffs' Counsel's application for an award of attorney's fees and expenses should be approved; and (4) Named Plaintiffs' Case Contribution Award should be paid.

Pursuant to the Preliminary Approval Order, the approved Notice of Class Action Settlement was sent to 17,407 current and former participants of the Plans on April 23, 2009. *See* Affidavit of Michelle M. LaCount, Esq., Senior Account Executive with A.B. Data, Ltd.'s Class Action Administration Division ("A.B. Data"), attached to the Ciolko Declaration as Exhibit B ("A.B. Data Affidavit").  Of these Notices, 1,393 were returned as undeliverable. Further, the approved Publication Notice was published nationally in *USA Today* on April 23, 2009.

In addition, as also stated in the Court's Preliminary Approval Order, Plaintiffs (through Class Counsel), have created a dedicated Settlement website through which current and former Plan participants can (1) view a summary description of the Action, the Settlement, and the status of the latter; (2) access the Settlement Agreement and related documents; (3) review

answers to "frequently asked questions" regarding the litigation and the Settlement and (4) access a phone number to call for further information.   The Internet site is located at http://www.LearERISAsettlement.com[11] and its contents and information were made accessible by the Court-mandated deadline and have been (and will be) updated as necessary.   As of June 12, 2009 the website had received 361 hits.   *See* A.B. Data Affidavit (detailing the number of times each document on the website was downloaded).   Additionally, Class Counsel received 7 emails regarding the Settlement from Class members and 160 telephone calls.   Of the 160 telephone calls only 62 required or requested a return call.   These calls were retuned by Class Counsel.  A.B. Data Affidavit, ¶ 12.

As of June 15, 2009, only *three* objections have been filed to the Settlement (although only two were actually filed with the Court), notwithstanding the wide dissemination of the Notice and information concerning the Settlement.   Ciolko Declaration, ¶ C.   As explained below, although Class Counsel take any objection seriously, the amount of objections, when compared to the sheer number of Class members, represents only a minuscule fraction of the individuals targeted by the Notice program, making the number of objectors *de minimis*, and not a significant obstacle to final approval of the Settlement.

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.   The Law Favors and Encourages Settlements

The law generally favors the settlement of complex class actions.   *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir.1981); *see also, In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 371 (S.D. Ohio 2006) ("This Court recognizes that settlement of class actions is generally

---

[11] The Settlement Internet website address was provided in both the Notice and Summary Notices.

favored and encouraged."); *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1026

(S.D. Ohio 2001), citing *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137

F.R.D. 240, 246 (S.D. Ohio 1991); 2 Herbert Newberg & Alba Conte, *Newberg on Class

Actions*, § 11.41 (3d ed. 1992).  As a "preferred means of dispute resolution, there is a strong

presumption by courts in favor of settlement." *In re Telectronics*, 137 F. Supp. 2d at 1027, citing

*In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997).  Indeed,

courts in this circuit have recognized that:

> Settlements and '[c]onsent decrees may produce more favorable
> results than more sweeping judicially imposed orders that might
> risk opposition and resistance . . . [t]hey also reduce the cost of
> litigation [and] engender judicial economy.'

*Stotts v. Memphis Fire Department*, 679 F.2d 541, 555 (6th Cir. 1982), *cert. granted sub nom

Firefighter's Local Union No. 1784 v. Stotts*, 462 U.S. 1105 (1983).

Approval of a class action settlement is proper if the settlement is "fundamentally fair,

adequate and reasonable" based on the circumstances of the case.  *In re Delphi Corp. Sec.,

Derivative and "ERISA" Litig.,* 248 F.R.D. 483, 496 (E.D. Mich. 2008); *Lessard v. City of Allen

Park,* 372 F.Supp.2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich,* 720 F.2d 909,

921-23 (6th Cir. 1983)); *Detroit Police Officers Ass'n v. Young*, 920 F. Supp. 755, 761 (E.D.

Mich. 1995) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)).

Further, the district court has discretion in determining whether to approve a class action

settlement, and its decision will not be reversed unless it has abused its discretion.  *Detroit Police

Officers Ass'n*, 920 F. Supp. at 761 citing *Bailey*, 908 F.2d at 42.

**B.**     **The Sixth Circuit Criteria for Settlement Approval**

FED. R. CIV. P. 23(e) governs the approval process for proposed class action settlements,

and provides in pertinent part:

(e)   Settlement, Voluntary Dismissal, or Compromise.

(1)(A) The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.

(B)   The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(C)   The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

*Id.*; *see also, Broadwing*, 252 F.R.D. at 372.

Thus far, this Court has preliminarily approved the proposed Settlement, and the Parties have effectuated the Notice Plan embodied in the Preliminary Approval Order. All that remains is this Court's final determination as to whether the proposed Settlement is "fair, reasonable, and adequate" as required by FED. R. CIV. P. 23(e)(1)(C) and Sixth Circuit precedent. As demonstrated below, the proposed Settlement indeed satisfies these requirements and serves the best interests of the Class as a whole.

In the Sixth Circuit, the district courts consider several factors in determining whether a proposed settlement satisfies FED. R. CIV. P. 23(e)(1)(C):

(1)   the plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

(2)   the complexity, expense and likely duration of the litigation;

(3)   the stage of the proceedings and the amount of discovery completed;

(4)   the judgment of experienced trial counsel;

(5)   the nature of the negotiations;

16

(6)     the objections raised by the class members;  and

(7)     the public interest.

*Broadwing,* 252 F.R.D. at 372; *Vukovich*, 720 F.2d at 922.  "The court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *In re Delphi Corp.,* 248 F.R.D. at 496 (quoting *UAW v. Ford Motor Co.*, No. 05-CV-74730, 2006 WL 1984363, at ** 21-22 (E.D. Mich. July 1, 2006)). "The district court enjoys wide discretion in assessing the weight and applicability of these factors." *Id.* (quoting *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992)).

As demonstrated below, the proposed settlement undeniably satisfies all Sixth Circuit criteria and therefore merits final approval by this Court.

**1.     Plaintiffs' Likelihood of Ultimate Success on the Merits Balanced against the Amount and Form of Relief Offered in Settlement Favors Approving the Settlement Agreement**

**(a)     Plaintiffs' Likelihood of Success**

The likelihood of success on the merits is a significant factor in the court's decision on whether to approve a class action settlement. *UAW v. General Motors Corp.*, No. 05-CV-73991, 2006 WL 891151, at *14 (E.D. Mich. March 31, 2006) (citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (citations omitted)).  Courts must "make a limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." *Manners v. Am. General Life Ins. Co.*, No. 98-CV-0266, 1999 WL 33581944, at *19 (M.D. Tenn. Aug. 11, 1999) (quoting *Ressler v. Jacobson*, 822 F. Supp. 1551, 1553 (M.D. Fla. 1992)).  Since the essence of settlement is compromise and the avoidance of the uncertainty and expense attendant with further contested litigation, courts

"should not decide the merits of the case or resolve unsettled legal questions." *UAW*, 2006 WL 891151, at *19 (quoting *Carson v. AM Brands*, 450 U.S. 79, 88 n. 14 (1981) (collecting cases)).

Indeed, courts in this circuit have recognized that "the trial court does not 'have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.'" *UAW,* 2006 WL 891151, at * 13 (quoting *Detroit v. Grinnell*, 495 F.2d 448, 456 (2d Cir. 1974)).  Rather, courts must focus on "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citing MANUAL FOR COMPLEX LITIGATION (THIRD), § 30.42 at 238 (1995)).  In doing so, courts should evaluate whether the parties have thoroughly and accurately analyzed and assessed the "relative merits and risks of settlement." *UAW*, 2006 WL 891151, at *15 (final approval of class action granted where "[t]he settling parties' written submissions and arguments make clear that they have extensively analyzed the relevant plan documents, have a firm grasp of the relevant law, and have thoroughly evaluated the respective arguments on the merits").

Defendants have continued throughout the litigation to deny liability and have presented strong and well-advocated defenses. *See Feerer v. Amoco Prod. Co.*, No. 95-CV-0012, 1998 U.S. Dist. LEXIS 22248, at *16 (D.N.M. May 28, 1998) (recognizing that Defendants asserted every possible defense to plaintiffs' claims and it was "clear that Defendants would have made every conceivable argument and offered every piece of evidence imaginable to avoid liability if the case had not settled").  For example, at summary judgment and trial, Defendants would have likely raised, *inter alia*, the following defenses: (i) Defendants did not owe a fiduciary duty to the Plan participants; (ii) if any duty was found to exist, Defendants complied with their duties under ERISA, including the duty to disclose complete and accurate information; (iii) Lear common

stock was not an "imprudent" plan investment during the relevant time period in question; and (iv) Defendants did not function as ERISA fiduciaries with regard to Plan investments in Lear common stock. All of these issues are both legally and factually complex, thereby militating in favor of settlement. *See In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (finding "additional factual and legal issues . . . would substantially increase the ERISA cases' complexity, duration, and expense – and thus militate in favor of settlement approval").

Defendants also raised as the sixth affirmative defense in their Answer to the Complaint that they are exculpated, in whole or in part, from the liability asserted in the Complaint by § 404(c) of ERISA, 29 U.S.C. § 1104(c). Section 404(c) provides a limited exception to fiduciary liability for losses resulting from participants' exercise of control over investment decisions. *See* 29 C.F.R. §2550.404(c)-1(a)(1). The Seventh Circuit, in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), recently gave more support to this "404(c)" defense. *Hecker* found, albeit in *dicta*, that "even if § 1104(c) does not always shield a fiduciary from an imprudent selection of funds under every circumstance that can be imagined, it does protect a fiduciary that satisfies the criteria of § 1104(c) and includes a sufficient range of options so that the participants have control over the risk of loss." *Id.* at 589. Thus Defendants would argue they met the criteria for protection under ERISA § 404(c).

Moreover, Defendants would have surely raised other compelling arguments during the course of this litigation through summary judgment and trial, if necessary. For instance, the existence of causation and damages were likely to prove extremely contentious, with powerful arguments on both sides. Defendants would likely have raised the complex issue of determining the appropriate points to begin and end the Class Period, including arguing that it should either

19

begin and/or end at a point that would make proving damages much more difficult, if not impossible.  In this matter, the Class Period alleged in the Complaint extended to the present.  It was only during negotiations of the Settlement that the Parties selected an end date for the Class Period.  This is significant because where the proposed class period extends to the present, and although a class may be certified in such instance, by the end of discovery Plaintiffs would have had to have chosen an imprudence end-date.  *See, e.g.*, *In re Schering Plough Corp.*, No. 03-CV-1204, 2008 WL 4510039, at *5 (D.N.J. Sept. 30, 2008) ("the parties do not yet have at their disposal a workable measure of when the stock was in fact imprudent because 'merits based' discovery has not begun.").  Choosing an end-point, and then defending it, would have posed additional challenges to the Plaintiffs.  *See Summers v. State Street*, 453 F.3d 404, 411 (7th Cir. 2006) ("So even if the methods of litigation could feasibly determine the point at which the ESOP trustee should sell in order to protect the employee-shareholders against excessive risk, the plaintiffs have made no effort to establish that point.")

This case presented additional unique problems regarding establishing Defendants' liability.  Specifically, it would be difficult to establish the liability of Defendants here where they had actually taken protective measures for the Plan and its participants as the industry in which Lear operated started experiencing difficulty in the last few years.  For instance, Lear implemented a 15% cap on contributions to the Lear Stock Fund in the Plan in December 2005 (for new hires) and February 2006 (for existing employees).  The 15% cap ended on October 31, 2007, at which point the 15% limit dropped to 0% (*i.e.*, the Lear Stock Fund was frozen to contributions at that time).  The freeze on contributions to the Lear Stock Fund, which was implemented on October 31, 2007, froze the Lear Stock Fund with respect to both salary deferral contributions and transfers from other plan funds.  In light of these steps taken by the Company,

Defendants would have asserted a fairly compelling argument that they met their fiduciary obligations to the Plan and its participants during the Class Period.

Moreover, recent Circuit-level analogous case law developments have strengthened positions favorable to Defendants.  For example, in *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008), the Fifth Circuit affirmed the dismissal of an analogous action on summary judgment, strengthening the presumption of prudence argument and accepting the defendants' argument that they might be excused from meeting their disclosure requirements in order to avoid liability for insider trading.  Notably, the Seventh Circuit recognized that a fiduciary who sells company stock too quickly may be sued for taking that action.  *See Summers v. State Street Bank & Trust Co.,* 453 F.3d 404, 411 (7th Cir. 2006) ("Of course, if State Street had sold earlier and the stock had then bounced back, as American Airlines' stock did, State Street might well have been sued by the same plaintiffs ….").  This "damned if you do, damned if you don't" argument would merit consideration in this case as the litigation moved forward.

Other significant hurdles faced Plaintiffs.  For example, in *In re Huntington Bancshares Inc. ERISA Litig.*, No. 08-CV-0165, 2009 WL 330308 (S.D. Ohio Feb. 9, 2009), the district court for the Southern District of Ohio dismissed breach of fiduciary duty claims, like those asserted in the Action, challenging investments in employer stock.  *Huntington* supports the argument, which Defendants surely would make on their summary judgment motion, that it cannot be an abuse of discretion to maintain company stock as a 401(k) option in the absence of "something akin to a 'red flag' of misconduct." *Id.* at *8 (internal quotation omitted).  Further, the court in *Huntington* deemed the stock price decline insufficient to maintain a claim for breach of fiduciary duty because Huntington's stock price moved in tandem with the other regional banks over the class period. *Id.*

Lastly, while there are numerous decisions addressing Federal Rules of Civil Procedure 12 and 56 motions in this type of action, to date, to the best of Class Counsel's knowledge, only four ERISA breach of fiduciary duty "company stock" class actions have gone to trial[12] – each case resulting in a defense verdict. *See Brieger v. Tellabs*, No. 06-CV-1882, 2009 WL 1565203 (N.D. Ill. June 1, 2009) (district court ruled that defendants did not breach ERISA mandated fiduciary duties by continuing to offer company stock as plan investment option); *Nelson v. IPALCO Enterprises, Inc.*. 480 F. Supp. 2d 1061 (S.D. Ind. 2007), *affirmed*, 512 F.3d 347 (7th Cir. 2008) (7th Circuit upheld district court's determination that Defendant fiduciaries did not breach their fiduciary duties under ERISA by failing to remove company stock as a plan investment option); *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006), *affirmed*, 497 F.3d 410 (4th Cir. 2007) (Fourth Circuit affirmed the district court's ruling that defendants did not  breach ERISA mandated fiduciary duties by continuing to offer company stock as plan investment option.); *Landgraff v. Columbia Healthcare Corp*. No. 98-CV-0090, 2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000), *affirmed*, 30 Fed. Appx. 366 (6th Cir. 2002) (district court ruled that defendants did not breach ERISA mandated fiduciary duties by continuing to offer company stock as plan investment option).  Thus, it is not speculation to assert that the risks of continuing to trial were high.

While Plaintiffs' Counsel are confident in their ability to establish liability and distinguish this matter from the above-referenced cases, they recognize numerous additional risks posed by continued litigation.  For example, the Court may deny Plaintiffs' Motion to

---

[12] *See In re Delphi Corp.*, 248 F.R.D. at 497 ("Indeed, as the ERISA Lead Plaintiffs acknowledge, trials on the ERISA issues presented have been few and far between and the few decisions on summary judgment and adjudications on the merits in this area demonstrate the heavy burden that Plaintiffs might ultimately have if the case were not resolved by settlement.")

Certify; Defendants, after lengthy and expensive discovery, may prevail on summary judgment; or Plaintiffs may ultimately lose at trial or obtain a judgment below the proposed $5.25 million Settlement. Moreover, even if Plaintiffs were successful in avoiding each of these obstacles, lengthy appeals would be sure to follow any judgment at the district court level.

### (b)    The Amount and Form of Relief Offered in Settlement

"Courts routinely recognize that settlements never equal the full value of the loss claimed by plaintiffs." *UAW*, 2006 WL 891151, at *17. Indeed, "[c]lass counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiff class." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983). Courts should not deny settlement approval "simply because the benefits accrued from the decree are not what a successful plaintiff would have received in a fully litigated case." *Id.* (citing *U.S. v. Trucking Employers, Inc.*, 561 F.2d 313, 317 (D.C. Cir. 1977)). Rather, to garner court approval a proposed class action settlement must be "fair, adequate, and reasonable under the circumstances" and serve "the interests of the class as a whole." *In re Teletronics*, 137 F. Supp. 2d at 1026.

Proving damages caused by fiduciary misconduct under ERISA is a painstaking, complex and expensive process, often requiring expert assistance and involving myriad calculations to enable the fact-finder to determine the effect of the alleged imprudence. Here, it was far from settled that Plaintiffs would succeed in proving damages exceeding the proposed Settlement amount. As noted above, Defendants would likely have raised the complex issue of determining the appropriate points to begin and end the Class Period, including arguing that it should either begin and/or end at a point that would make proving damages much more difficult, if not impossible. There was thus a very real possibility of the Plan and Class receiving no recovery after summary judgment and/or trial.

As discussed above, Plaintiffs respectfully submit that the complexities and concomitant risks of establishing damages, when weighed against the substantial and immediate benefits of the proposed $5.25 million Settlement to the Class as a whole, militate in favor of settlement approval.

>    **2.    The Complexity, Expense and Likely Duration of the Litigation Favor
>            Approving the Settlement Agreement**

Courts must evaluate the complexity, expense and likely duration of litigation before granting approval of a class action settlement. *In re Telectronics*, 137 F. Supp. 2d at 1013; *Delphi*, 248 F.R.D. at 497. In assessing proposed class actions settlements, courts in this circuit are mindful that:

> [T]he court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

*UAW*, 2006 WL 891151, at * 18 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)). As one court aptly recognized when considering a proposed class action settlement, complexities abound in ERISA breach of fiduciary duty cases:

> The ERISA cases would pose additional factual and legal issues. Fiduciary status, the scope of fiduciary responsibility, the appropriate fiduciary response to the Plans' concentration in company stock and GX's business practices would be issues of proof, and numerous legal issues concerning fiduciary liability in connection with company stock in 401(k) plans remain unresolved. These uncertainties would substantially increase the ERISA cases' complexity, duration, and expense - - and thus militate in favor of settlement approval.

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

Indeed, the precise facts compelling the court to approve settlement in *In re Global Crossing* are also present here. First, this Court would need to rule on Plaintiffs' pending Motion

to Certify a class.  Assuming that Plaintiffs' Motion to Certify is granted and not disturbed after any FED. R. CIV. P. 23(f) review, merits discovery would continue in earnest, with voluminous additional document production and review, expert discovery and numerous depositions as a prelude to dispositive motions and trial, thus delaying final resolution of Plaintiffs' claims for years.  These efforts would consume significant time and expense by both Parties as well as the precious resources of this Court, with Plaintiffs and the Class possibly obtaining a recovery below the proffered Settlement, or no recovery at all.  Furthermore, any judgment in favor of the Class of an amount more that $5.25 million would not result in an immediate recovery by the Class Members.  Recovery of the judgment would be further delayed by post-trial motions and appeals. *Broadwing*, 252 F.R.D. at 374.

Accordingly, Plaintiffs respectfully submit that the relevant facts and circumstances weigh heavily in favor of approving the proposed $5.25 million Settlement.  *See, e.g.*, *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) (final settlement approved where immediate benefits of settlement "outweigh[ed] the possibility of obtaining a better result at trial, particularly when factoring the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal") (quoting *In re Cardizem*, 218 F.R.D. at 525).

### 3.     The Stage of the Proceedings and the Amount of Discovery Completed Favor Approving the Settlement Agreement

Here, as detailed above, the Parties engaged in both formal and informal discovery.  "Counsel's reliance upon informal discovery does not preclude approval of the proposed Settlement." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 557 (S.D. Ohio 2000) (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 319 (3d Cir. 1998) (citations omitted)).  Indeed, "the absence of formal discovery is not unusual or problematic, so

long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *UAW*, 2006 WL 891151, at * 19 (collecting cases).

The volume and substance of Class Counsel's knowledge of this case are unquestionably adequate to support the Settlement. Prior to entering into the Settlement Agreement, Class Counsel thoroughly investigated and analyzed the Plaintiffs' claims and the defenses raised by Defendants as discussed above. During the course of discovery, tens of thousands of pages of documents were produced by Defendants which Plaintiffs, through their Counsel reviewed. Moreover, Class Counsel extensively reviewed publicly available documents, hundreds of pages of Plan-related documents, including master Plan documents, Summary Plan Descriptions, and Summary Material Modifications, documents filed with the SEC and publicly available analysts reports as well as materials available from other Company litigation. All of this information served to augment the significant amount of information Plaintiffs had accumulated from their own investigation. Plaintiffs' Counsel also drew on their extensive knowledge of ERISA law with respect to fiduciary duties relating to the investment of company stock in defined contribution plans to plead the case as strongly as possible, including with reference to the factual results of their investigation.

The investigation, formal and informal discovery, extensive briefing on the Motion to Dismiss, preparation and filing Plaintiffs' Motion to Certify, and the exhaustive Settlement negotiation process have enabled the Parties to develop the issues in this case to an appropriate point to reach settlement. Plaintiffs' counsel exhaustively researched and investigated the factual and legal predicates for the claims set forth in the Complaint. After filing suit and before entering into the proposed Settlement, counsel reviewed tens of thousands of pages of documents produced.

Plaintiffs respectfully submit that their investigative efforts, coupled with discovery conducted in this litigation, provided them with more than ample information to properly and fairly assess the merits of the proposed Settlement Agreement.

### 4.      The Recommendation and Experience of Counsel Warrants Approval of the Settlement Agreement

Courts further recognize that the opinion of experienced, informed and competent counsel in favor of settlement should be afforded substantial consideration. *Williams*, 720 F.2d at 922-23; *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'") (citations omitted). Here, Class Counsel include some of the preeminent ERISA class action attorneys in the country with decades of experience in prosecuting and trying complex actions.[13]

Lead Class Counsel Barroway Topaz Kessler Meltzer & Check, LLP (BTKMC) is well-regarded nationally for their successful representation of clients in complex ERISA class action matters.   BTKMC's ERISA litigation department is one of the foremost in the country representing employees as Lead or Co-Lead counsel in numerous ERISA breach of fiduciary class actions directly analogous to the instant litigation.[14]   Acknowledging the firm's history and track record of impressive results, courts have not hesitated to appoint BTKMC as class counsel in numerous ERISA breach of fiduciary class actions, directly analogous to the instant matter.[15]

---

[13] *See* the firm resumes of Class Counsel, attached to Ciolko Declaration as Exhibits F through L.

[14] The Court's attention is respectfully referred to the firm biographical data of Barroway Topaz Kessler Meltzer & Check, LLP, attached to the Ciolko Declaration as Exhibit C.

[15] *See, e.g.*, *Ingram v. Health Management Assoc.*, No. 2:07-CV-00529 (M.D. Fl. June 10, 2009); *In re Lincoln Nat'l Corp. ERISA Litig.*, No. 08-CV-5740 (E.D. Pa. June 4, 2009); *In re 2008 Fannie Mae ERISA Litig.*, No. 09-CV-01350, MDL No. 2013 (S.D.N.Y. May 15, 2009); *In re Constellation Energy, Inc. ERISA Litig.*, No. 08-CV-02662 (D. Md. Jan. 27. 2009); *In Re: Bear Stearns Cos, Inc. Sec., Derivative, and ERISA Litig.*, No. 08-MD-1963, 2009 WL 50132 (S.D.N.Y. Dec. 29, 2008); *In re: SLM Corp. ERISA Litig.*, No. 08-CV-4334 (S.D.N.Y. Sept.

BTKMC's dedication to prosecute matters on behalf of class members to the fullest is unsurpassed. Indeed, just over a month ago, BTKMC as Co-Lead Class Counsel completed a trial in the *Brieger v. Tellabs, Inc.*, No. 06-CV-01882 (N.D. Ill.) ("*Tellabs*") case discussed above. *Tellabs* was an ERISA "company stock" breach of fiduciary duty class action, similar to this Action. To the best of BTKMC's knowledge, this was only the ***fourth*** such ERISA case to go to trial. *Tellabs* was a case that spanned three years from its inception to the conclusion of trial and required the expenditure of tremendous resources, both financially and personnel-wise. Prosecution of *Tellabs* through trial is but one example of the dedication BTKMC employs in every case it handles.

Moreover, in the course of prosecuting ERISA class actions such as this as lead or co-lead class counsel across the country, BTKMC has prepared numerous consolidated pleadings, responded to innumerable motions to dismiss, propounded discovery requests and reviewed millions of pages of plan-related documents and related merits discovery. Indeed, the firm's litigation efforts have resulted in favorable and oft-cited opinions in a number of ERISA decisions denying defendants' motions to dismiss or for summary judgment.[16]

---

30, 2008); *Dresslar v. Wellpoint, Inc.*, No. 08-CV-00679-DFH-TAB (S.D. Ind. May 22, 2008); *Grosick v. Nat'l City Corp.*, No. 08-CV-00144-PAG (N.D. Ohio Jan. 17, 2008); *Riccio v. Huntington Bancshares Inc.* No. 08-CV-00165-GLF-TPK (S.D. Ohio Feb. 20, 2008); *In re First Am. Corp. ERISA Litig.*, No. 08-CV-01357-JVS-RNB (C.D. Cal. Nov. 16, 2007); *In re Beazer Homes USA, Inc. ERISA Litig.*, No. 07-CV-00952-RWS (N.D. Ga. April 30, 2007); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355 (E.D. Mich. 2006); *In re Lear ERISA Litig.*, No. 06-CV-11735 (E.D. Mich. Apr. 10, 2006); *In re Honeywell ERISA Litig.*, No. 03-CV-1214 (D.N.J. Oct. 22, 2004); *Wilson v. Federal Home Loan Mortgage Corp.*, MDL No. 1584, No. 04-CV-2632 (JES) (S.D.N.Y. Apr. 7, 2004); *Koch v. Loral Space & Commc'ns Ltd.*, No. 03-CV-9729 (S.D.N.Y. Dec. 8, 2003); *In re Schering-Plough Corp. ERISA Litig.*, No. 03-CV-1204 (D.N.J. July 30, 2003); *Gee v. UnumProvident Corp.*, No. 03-CV-1552 (E.D. Tenn. Sept. 3, 2003); *In re Raytheon ERISA Litig.*, No. 03-CV-10940-RGS (D. Mass. Mar. 19, 2003); *In re Westar Energy Inc. ERISA Litig.*, No. 03-CV-4032 (D. Kan. Mar. 7, 2003).

[16] *See, e.g., Brieger v. Tellabs, Inc.* No. 06-CV-01882 (N.D. Ill. Mar. 16, 2009); *In re Ford Motor Co. ERISA Litig.*, No. 06-CV-11718, 2008 WL 5377955, at *3 (E.D. Mich. Dec. 22, 2008); *In re First Am. Corp. ERISA Litig.*, No. 08-CV-01357, 2008 WL 5666637 (C.D. Cal. July 14, 2008); *In re Diebold ERISA Litig.,* No. 06-CV-

BTKMC has also prevailed in appeals before the First, Third and Ninth Circuits resulting in seminal decisions that have helped shape this still relatively new area of ERISA jurisprudence. For instance, in *Evans v. Akers,* 534 F.3d 65 (1st Cir. 2008) BTKMC successfully argued that former employees who have received lump sum distributions of the entire balance of their retirement plan have standing to sue under ERISA. *See also In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005) (finding that a subset of participants in a defined contribution plan had standing to sue on behalf of the plan pursuant to ERISA § 502(a)(2)); *In re Syncor ERISA Litig.,* 516 F.3d 1095 (9th Cir. 2008) (overturning district court's grant of summary judgment).

In addition to its extensive litigation experience, the firm has also successfully engaged in extensive, intricate and successful settlement negotiations involving complex legal and factual issues involving ERISA claims, including court-ordered mediations.  These negotiations and mediations have resulted in large recoveries for affected classes of Plan participants. *See In re AOL ERISA Litig.*, No. 02-CV-8853 (S.D.N.Y.) (as Co-Lead Counsel, BTKMC helped obtain a $100 million settlement); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) (settlement providing injunctive relief and $78 million payment for plan losses);

---

0170, 2008 WL 2225712 (N.D. Ohio May 28, 2008);  *Brieger v. Tellabs, Inc.*, 473 F. Supp. 2d 878 (N.D. Ill. 2007); *In re Lear ERISA Litig.*, No. 06-CV-11735 (S.D. Mich. Apr. 10, 2006); *In re: Merck & Co., Inc. Sec. Derivative & ERISA Litig.*, No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006); *Woods v. Southern Co.*, 396 F. Supp. 2d 1351 (N.D. Ga. 2005); *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-CV-4743, 2005 WL 1662131 (N.D. Cal. July 14, 2005); *In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*, No. 02-CV-8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005); *Wilson v. Federal Home Loan Mortgage Corp.*, MDL No. 1584, No. 04-CV-2632 (S.D.N.Y. Feb. 7, 2005); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461 (S.D.N.Y. 2005); *Gee v. UnumProvident Corp.*, No. 03-CV-0147, 2005 WL 534873 (E.D. Tenn. Jan. 13, 2005); *In re Honeywell Intern. ERISA Litig.*, No. 03-CV-1214, 2004 WL 3245931 (D.N.J. Sept. 14, 2004); *In re ADC Telecomms., Inc. ERISA Litig.*, No. 03-CV-2989, 2004 WL 1683144 (D. Minn. July 26, 2004); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-CV-8324, 2004 WL 407007 (N.D. Ill. March 3, 2004); *Falk v. Amerada Hess Corp.*, No. 03-CV-2491 (D.N.J. May 10, 2004); *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970 (C.D. Cal. 2004); *In re CIGNA Corp. ERISA Litig.*, No. 03-CV-00714 (E.D. Pa. Aug. 2, 2004); *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361 (N.D. Ga. 2004).

*In re Bristol-Myers Squibb Co. ERISA Litig.*, No. 02-CV-10129 (LAP) (S.D.N.Y.) (as Co-Lead Counsel, achieved a cash recovery of $41.22 million and significant structural relief regarding how the 401(k) plans at issue are administered valued at up to $52 million); *Lewis et al. v. El Paso Corp.*, No. H-02-4860 (S.D. Tex) (as sole Lead Counsel, obtained a $17 million settlement); *In re Honeywell Int'l ERISA Litig.*, No. 03-CV-1214 (DRD) (D.N.J. 2004) (as sole Lead Counsel, achieved a $14 million recovery as well as significant structural relief regarding the retirement plan's administration and investment of its assets).

Plaintiffs' Executive Committee, each of whom is well-qualified and experienced in prosecuting complex actions such as this case, also greatly assisted in producing the results achieved in this matter. [17]   As set forth in its accompanying firm resume, Squitieri & Fearon, LLP has significant experience handling class actions, including ERISA class actions, as well as other complex litigation and is well-versed in the law of ERISA and class actions. Its attorneys have decades of experience in class action litigation and have successfully represented classes of investors and plan participants in similar claims in courts throughout the country.

Additionally, Kahn Swick & Foti, LLC has extensive experience in complex litigation. For example, KGS is currently serving, or has successfully prosecuted, as lead or co-lead counsel in numerous shareholder's derivative and class action cases including:  *In re Xethanol Corp. Sec. Lit.*, No. 06-10234 (S.D.N.Y.), *In re: Pixelplus Co., Ltd.*, No. 06-cv-02951 (S.D.N.Y.).  Further, Motley Rice LLC attorneys have substantial experience in the prosecution of shareholder, securities, and other class actions as well as a wide variety of complex litigation.

---

[17] The Court's attention is respectfully referred to the firm biographical data of the other Class Counsel members which are attached to the Ciolko Decl. as Exs. F through L.

Lastly, Stephen Wasinger specializes his practice in all manner of complex civil litigation, including securities, ERISA, consumer and antitrust litigation. Mr. Wasinger tried major cases throughout the United States, including complex securities, ERISA and antitrust cases throughout the United States.

Class Counsel recommend this Settlement, which is the product of thorough and comprehensive investigation, analysis and hard fought negotiation. *See IUE-CWA,* 238 F.R.D. at 597 ("It . . . is well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs.") (citations omitted). Moreover, as noted above, Class Counsel's recommendations are supported by Fiduciary Counselors' anticipated approval of the proposed Settlement on behalf of the Plans.

Accordingly, Plaintiffs respectfully submit that Class Counsel's extensive and broad based experience litigating and successfully resolving ERISA breach of fiduciary duty cases weighs in favor of settlement approval in this case.

### 5.    The Nature of the Negotiations Warrant Approval of the Settlement Agreement

"So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997). *See also* Newberg & Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002). Settlement approval is appropriate where the parties reach an agreement after arm's length negotiations – *i.e.* where there is no collusion or benefit to certain parties to the detriment of the class as a whole. *See In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990). Of particular significance here, courts in this circuit have stated that settlement negotiations enlisting "[t]he participation of an independent mediator . . . virtually insures that the negotiations were conducted at arm's length

31

and without collusion between the parties." *Hainey v. Parrott*, 02-CV-733, 2007 WL 2752375, at *3 (S.D. Ohio Sept. 20, 2007) (citations omitted).

As set forth in detail above, the parties agreed to settle this case after more than two years of hard fought litigation and intense and adversarial negotiations under the supervision of this Court and the mediator. The $5.25 million was only achieved after extensive negotiations between the Parties with the assistance of an experienced mediator and with the assistance of this Court. These lengthy arm's-length negotiations between experienced counsel weigh in favor of approving the proposed Settlement.

> **6.     The Relative Lack of Objections Raised by the Class Members Favors Approval of the Settlement Agreement**

Following preliminary approval, a class action settlement is considered "presumptively reasonable" and those objecting to the settlement bear "a heavy burden of demonstrating that [it] is unreasonable." *Williams*, 720 F.2d at 921 (citing, *Stotts*, 679 F.2d at 551 (citations omitted).). Indeed, the adequacy and reasonableness of the proposed Settlement is evidenced here by the fact that, following service of the settlement notice via direct mail to 17,407 Settlement Class Members and nationwide publication in *USA Today*, **only three** individuals, lodged objections with the Court regarding the Settlement terms, amount, or Class Counsel's request for attorneys' fees, expenses and Named Plaintiff contribution awards. *See Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) (Holding that "[t]he small number of objectors is a good indication of the fairness of the settlement."); *Delphi*, 248 F.R.D. at 501 ("The fact that there are no substantive objections . . . is strong evidence that the Settlements are fair, adequate and reasonable and supported by the Class Members."); *Rankin*, 2006 WL 1876538, *4 (Finding that only 4 objections of a class of over 100,000 members was overwhelming support of the settlement.); *Am. Employers' Ins. v. King Res.*, 556 F.2d 471, 478 (10th Cir. 1977) (stating fact

that one objector alone lodged opposition settlement agreement was of striking significance and import).

The first objection simply states that the negotiated percentage of attorneys' fees is too large. *See* Ex. D to Ciolko Decl. Summary objections, which lack any explanation or authority, such as the objection here, should be overruled. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (rejecting broad, unsupported objections because "[they] are of little aid to the Court."). The objector does not make a serious challenge to the more important point before the Court – that is, whether the requested fee reasonable in light of all the circumstances present in this case? As explained in detail in the Fee Memorandum, the fee here is commensurate with the recovery for the Plan.

The second objector simply states that she does not wish to participate in this Settlement. *See* Ex. D to Ciolko Decl. This objection bears further explanation to the Court. It is an objection lodged by Janice Sabol who spoke to Class Counsel after filing her objection. *See* Ciolko Decl., ¶ 69. Ms. Sabol indicated to Class Counsel upon her departure from Lear she signed a release which, she believed, precluded her from bringing any lawsuit against Lear. In keeping with the release that she signed, Ms. Sabol filed her objection stating that she did not wish to bring suit against Lear. On June 10, 2009, Edward W. Ciolko, a partner at BTKMC, spoke to Ms. Sabol to discuss whether or not she could participate in the Settlement. Mr. Ciolko explained that the release signed at the termination of her employment did not preclude her from participating in the Settlement and, if the Settlement was approved, that she would receive any payment she may be eligible to receive under the Plan of Allocation. Mr. Ciolko also obtained agreement of this point from defense counsel. *See* Ciolko Decl. at ¶ 69. Ms. Sabol indicated that she understood. Despite the explanation of why Ms. Sabol filed an objection, her objection still

remains a summary objection and should not be given any weight.  *See Lorazepam*, 205 F.R.D. at 378.

The last "objection" is utterly unmeritorious.  On April 14, 2009, three "individuals," identified as Charles Milles Manson, Roman Polanski and Jonathan Lee Riches, who, as far as Class Counsel can ascertain, are not members of the Settlement Class, filed a one-page, hand written Motion for Reconsideration and Clarification and Motion to Intervene as Plaintiffs pursuant to FED. R. CIV. P. Rule 24(A)(2) and 24(B) ("Manson Motion").  *See* Ex. _ to the Ciolko Decl.  The hand-written motion was signed by "Jonathan Lee Riches."  The Court should disregard the Manson Motion in its entirety as it fails to challenge in any detail the substance of the Settlement.

Accordingly, this fact weighs in favor of approving the Proposed Settlement.

### 7.    Public Interest

Public policy favors settlement, especially in complex matters such as class actions alleging breach of fiduciary duty claims under ERISA.  Indeed, the Sixth Circuit has expressly recognized the public interests served through compromise:

> Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit.  By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before overburdened courts, and to citizens whose taxes support the latter.  An amicable compromise provides the more speedy and reasonable remedy for the dispute.

*Stotts v. Memphis Fire Dept.,* 679 F.2d 541, 555 n.11 (6th Cir. 1982); *Cardizem*, 218 F.R.D. at 530 (E.D. Mich. 2003) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.") (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

As discussed above, the settlement of this case brings closure to litigation initiated in 2006, which if litigated through trial and appeal would consume an enormous amount of the Parties' time and the valuable resources of this Court. Accordingly, the interests of the public as well as the Class are served by resolution of this Action now.

### C.      Notice to Prospective Class Members was Adequate

As detailed below, the Notice scheme, approved by this Court in its Preliminary Approval Order and subsequently implemented by Class Counsel, easily meets the requirements of providing the Class a full and fair opportunity to consider the settlement.

In determining whether to grant approval of a proposed settlement, the Court must confirm that adequate notice was issued to all prospective class members, in accordance with due process concerns and Rule 23 of the Federal Rules of Civil Procedure. The standard for the adequacy of a settlement notice is one of reasonableness. *UAW v. GMC*, 497 F.3d 615, 629 (6th Cir. 2007). In order to satisfy due process considerations, notice to Class Members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citations omitted).

Courts in this Circuit have determined that direct mailings to class members' last known address coupled with newspaper publication provide class members with "a full and fair opportunity to consider the proposed decree and develop a response." *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 139 (W.D. Ky. 1992), (citing *Mullane* 399 U.S. at 315 and *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)). As detailed below, the Notice scheme approved by this Court in its Preliminary Approval Order and implemented by Plaintiffs' Counsel exceeds these requirements.

Here, with the assistance of AB Data, the Parties effectuated the Notice Plan approved by the Court in its Preliminary Approval Order.   Notice effectuation entailed (1) mailing the Individual Notice to 17,407 Settlement Class Members on or about April 23, 2009 at their last known address provided by Defendants; (2) publishing the Summary Notice in *USA Today* on April 23, 2009; (3) establishing a toll-free Interactive Voice Response ("IVR") system which became operational on or about April 22, 2009 and included recorded information about the Settlement, the option to request a Notice and a voicemail message and retrieval system; 4) creating the dedicated Settlement website (administered and maintained by Class Counsel) where additional Settlement-related information, including both the Notice and Summary Notice, was made available to Class Members; and 5) creating a dedicated e-mail account, monitored by Class Counsel, where Class Members could submit Notice requests, questions, comment and notify counsel of address changes.

In the days following the April 23, 2009 Notice mailing, the IVR system received a total of 160 telephone calls and several potential Class Members requested Notices.  As noted above, in the aggregate, the Notice Administrator mailed 17,514 Notices, including 107 Notices that were re-mailed to Class Members at updated addresses supplied by the U.S. Postal Service. Moreover, the dedicated Settlement website, www.LearERISAsettlement.com, was made available to Settlement Class Members on April 21, 2009.  The website included links to several Settlement-related documents.  To date, the website has received 361 "hits."  In addition to the information provided through the website, Class Counsel has received and replied to 7 e-mails from Class Members.

Similar notice programs used in the settlement of analogous actions have been judicially approved as appropriate, fair and adequate.  *See, e.g.*, *Rankin v. Rots*, No. 02-CV-71045, 2006

WL 1876538, *5 (E.D. Mich. June 27, 2006); *In re Honeywell ERISA Litig.*, No. 03-CV-01214

(D.N.J. July 19, 2005) (Final Fairness Hearing Transcript) (attached to the Ciolko Decl. as Ex.

N); *In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4826, 2004 U.S. Dist. LEXIS 20671, *15-

*16 (S.D.N.Y. Oct. 18, 2004) ("*WorldCom*"); *In re Global Crossing*, 225 F.R.D. at 448-49

(noting that a Notice Plan similar to that utilized here "went well beyond the requirements for the

non-opt-out ERISA classes").   Class Counsel respectfully submit that adequate notice was

provided to prospective class members in this matter.

### D.     The Plan of Allocation

The Plan of Allocation is attached to the Settlement Agreement as Exhibit C.[18]   In

relevant part, Plan participants' Settlement allocation will be calculated as follows:

- For each Settlement Class Member, the Claims Administrator shall determine the approximate net loss ("Net Loss") as follows:   Net Loss = A + B - C - D, where, for each Settlement Class Member's account: A = the dollar value, if any, of the balance in the Company Stock or units on the first day of the Class Period; B = the dollar value, if any, of all purchases of Company Stock or units during the Class Period, as of the time of purchase(s); C = the dollar value, if any, of all dispositions of Company Stock or units during the Class Period as of the time of the sale(s); and D = the dollar value, if any, of Company Stock or units remaining on the last day of the Class Period.

- The Net Losses of the Settlement Class Members as calculated above will be totaled to yield the loss of the Plans as a whole over the Class Period (the "Plans' Loss").

- The Claims Administrator shall calculate for each Settlement Class Member his or her "Preliminary Fractional Share" of the Plans' Loss, *i.e.*, by dividing each Settlement Class Member's Net Loss by the Plans' Loss.

---

[18] *See* Sections 1.31, 2.3.3 and 8.24 of the Settlement Agreement.

- The Claims Administrator shall then calculate for each Settlement Class Member his "Preliminary Dollar Recovery" of the Net Settlement Fund Proceeds by multiplying the Settlement Class Member's Preliminary Fractional Share by the Net Settlement Fund Proceeds.

- The Claims Administrator shall identify all Settlement Class Members whose Preliminary Dollar Recovery is greater than zero but less than a minimum amount of ten dollars ($10.00) (the "Minimum Amount").   All such Settlement Class Members shall receive an allocation from the Net Settlement Fund Proceeds of the Minimum Amount.

- The Claims Administrator shall then, taking into account the Settlement Class Members who receive the Minimum Amount, recalculate the Preliminary Fractional Shares and the Preliminary Dollar Recoveries as many times as necessary so as to arrive at the "Final Fractional Share" and the "Final Dollar Recovery" for each Settlement Class Member.   The sum of the Final Dollar Recoveries must equal the Net Settlement Fund Proceeds.

Under the above Plan of Allocation, a Plan participant's share of the proceeds of the Net Settlement Amount depends generally on the dollar value of the participant's interest in the Lear Stock Fund held in his/her Plan account during the Class Period and the amount that he/she lost as a result.   The formula takes into account the purchases and sales of shares in the Lear common stock made to and from the account during the Class Period.   In general, the more a participant lost because of the decline in value of the Lear common stock in his/her Plan account, the larger his/her share of the Net Settlement Amount will be.

All participants are treated equally under the formula.   The allocation shares calculated will not be paid directly to participants.   Rather, the respective amounts of the Net Settlement Account will be allocated to the individual accounts maintained by the Plan for the Settlement Class members.   In the event a Settlement Class member has completely withdrawn his/her account (such as, for example, following termination of employment with Lear), an account for

the participant will be reestablished and the participant notified. The participant can then choose whether to request a distribution in any manner permitted by the Plan.

Under the above-described methodology, individual participants are not required to do anything to receive their portion of the Settlement; rather, the Claims Administrator already possesses all information necessary to produce an accurate allocation calculation. Class Counsel, with the assistance of experts in data analysis, will help oversee all record compilation and allocation calculations.

The allocation method set forth herein is the basic approach that has been used in settlements of other 401(k) company stock cases, and it has been approved by judges in numerous cases. *See, e.g., In re CMS Energy ERISA Litig.*, No. 02-CV-72834, 2006 WL 2109499 (E.D. Mich. June 27, 2006); *Reinhart v. Lucent Tech., Inc.,* No. 01-CV-3491 (D.N.J. Mar. 15, 2004) (attached to the Ciolko Decl. as Ex. N); *In re Providian Fin. Corp. ERISA Litig.* No. 01-CV-05027, 2002 WL 31785044 (N.D. Cal. Nov. 14, 2002); *In re Global Crossing ERISA Litig.,* No. 02-CV-7453 (GEL) (S.D.N.Y. Feb. 14, 2005) (Docket No. 30). This methodology has worked well in those cases, and Class Counsel believes it will serve the Class Members well here.

## IV.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

Plaintiffs, pursuant to the Settlement Agreement, seek certification of the following class for settlement purposes only:

> All persons who were participants in or beneficiaries of the Plans
> at any time between October 21, 2004 and March 6, 2009[19] (the

---

[19] As noted above, the Complaint alleged a class period extending to the "present." However, as part of the Settlement Agreement, the Class Period is now defined as October 21, 2004 through and including the Agreement Execution Date of March 6, 2009.

"Class Period") and whose accounts included investments in the Lear Stock Fund.

The Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618 (1997). Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, and to obtain class certification by the Court, the putative class must satisfy the requirements of Rule 23(a) and (b). *See Cardizem*, 218 F.R.D. at 517. The proposed class easily satisfies these requirements.

### A.     Rule 23(a)(1) – "Numerosity"

To satisfy the numerosity requirement, the court must find that the class is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Data supplied by Defendants reveals that there were 17,407 persons or entities who were participants in the Plans at any time between October 21, 2004 and March 6, 2009. *See* A.B. Data Affidavit attached to the Ciolko Decl. as Exhibit B. Accordingly, Plaintiffs respectfully submit that numerosity is clearly satisfied here. *See Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884, n.1 (6th Cir. 1997) (court characterized as "frivolous" defendant's challenge to numerosity where class numbered approximately 1100.); *Crawford v. TRW Automotive U.S. LLC*, No. 06-14276, 2007 WL 851627, at * 3 (E.D. Mich. Mar. 21, 2007) ("it generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement.")

### B.     Rule 23(a)(2) – "Commonality"

Commonality under Rule 23(a)(2) is met where there is "*a* common question of law or fact" shared by the class. *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (emphasis in original)); *Sprague v. G.M. Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (court recognized that "[a]lthough

40

Rule 23(a)(2) speaks of 'questions' in the plural . . . there need only be one question common to the class . . . the resolution of which will advance the litigation.") (citations omitted).

Commonality is satisfied here. Indeed, Plaintiffs and the proposed Class share not one but multiple common questions of law and fact, the resolution of which advances the litigation. The primary question common to all is whether Defendants breached their ERISA-mandated fiduciary duties owed to the Plans and its participants by allowing the Plans to invest in Company stock when Defendants knew or should have known of non-public financial and operational problems which adversely affected the prudence of Lear Stock as a Plan investment. *See Shirk v. Fifth Third Bancorp,* No. 05-CV-049, 2008 WL 4425535, at *2 (S.D. Ohio Sept. 30, 2008) (finding commonality in analogous ERISA action alleging nearly identical common questions of law and fact); *Rankin*, 220 F.R.D. at 517-18 (same); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) (same); *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (citing *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries.").

As one court in this Circuit has held, cases such as the instant one where "[e]ach of the class members are participants in the same retirement plan who have been injured by a common practice of the [plan]" are "perfect" for class certification "because of truly common questions of law and fact." *Crosby v. Bowater Ret. Plan for Salaried Employees of Great N. Paper*, 212 F.R.D. 350, 355-56 (W.D. Mich. 2002). This ERISA case undoubtedly satisfies the commonality requirement.

C.      Rule 23(a)(3) – "Typicality"

The claims raised by Plaintiffs are "typical" of the claims of all members of the proposed

Class, as required by Rule 23(a)(3).[20]  Typicality exists where plaintiffs' claims "arise[] from the

same event or practice or course of conduct that gives rise to the claims of the other class

members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*,

75 F.3d 1069, 1083 (6th Cir. 1996).  "The premise of the typicality requirement is simply stated:

as goes the claim of the named plaintiff, so go the claims of the class." *Sprague,* 133 F.3d at

399.  Varying degrees of injury among class members will not defeat typicality when "the basic

injury each class member asserts is the same." *Broadwing,* 252 F.R.D. at 377 (citing *Bittinger v.*

*Techumseh Prods. Co.*, 123 F.3d 877, 885 (6th Cir. 1997)).  "Moreover, in a breach of fiduciary

duty case seeking recovery for the Plan as a whole, the focus is the conduct of the Defendants-

not the conduct of the Plan participants." *Tatum*, 254 F.R.D. at 66 (citing *In re Ikon Office*

*Solutions*, 191 F.R.D. 457, 465 (E.D. Pa. 2000) and *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D.

70, 78 (E.D. Va. 2006)); *Brieger v. Tellabs, Inc.,* 245 F.R.D. at 350 (N.D. Ill. 2007) ("The Court

is persuaded that plaintiffs' claims are typical of those of the putative class, principally because

they seek relief on behalf of the Plan under section 502(a)(2) of ERISA for alleged fiduciary

violations as to the Plan."); *Kanawi*, 254 F.R.D. at 110 (same).

Plaintiffs' claims are clearly typical of those of the proposed Class.  Each was a

participant of the Plan during the Class Period and had part of their individual Plan investment

portfolio (consisting of participant directed and/or Company matching contributions) invested in

Lear stock during that time.   Each Class Representative sustained injury arising out of

---

[20] The Supreme Court has recognized that the commonality and typicality analyses "tend
to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

Defendants' alleged wrongful conduct of breaching their fiduciary duties under ERISA during the Class Period as described herein and in the Complaint.  Therefore, the typicality requirement of Rule 23(a)(3) is easily met.

### D.      Rule 23(a)(4) – "Adequacy of Representation"

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Given the binding effect of a class action judgment, due process demands a finding of adequate representation.  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996), citing *Hansberry v. Lee*, 311 U.S. 32, 61 (1940).

The Sixth Circuit has espoused two criteria for determining the adequacy of representation:  "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976).  Plaintiffs here meet elements of this test.

The first prong of the "adequacy" requirement largely overlaps with the commonality and typicality requirements of Rule 23(a)(2)-(3).  Plaintiffs' interests here are not antagonistic to those of the Class.  Their interests are united in proving Defendants' fiduciary misconduct and achieving the maximum possible recovery.  *See Rankin*, 220 F.R.D. at 520.  Indeed, Plaintiffs' interests are squarely in line with those of the proposed Class.

Second, Plaintiffs have retained qualified, experienced attorneys with broad-based, multi-jurisdictional experience in complex class action litigation, especially in the context of breach of fiduciary duty cases under ERISA.  Class Counsel, led by the law firm of BTKMC, has vigorously prosecuted this action on behalf of the Named Plaintiffs and the Settlement Class as a whole to obtain the best possible recovery for the Plans.  *See also*, discussion of Rule 23(g)

pertaining to Plaintiffs' Counsel's adequacy, below.   Thus, Plaintiffs and Plaintiffs' Counsel
have more than adequately represented the Class and will continue to do so.

### E.      The Class May Be Properly Certified under Rule 23(b)(1)

Finally, in addition to the four requirements of Rule 23(a), a class must also satisfy one of
the three subparts of Rule 23(b).   It is often observed that the Rule 23(b) requirements overlap
considerably with those of Rule 23(a), and with each other.   Herbert B. Newberg and Alba
Conte, NEWBERG ON CLASS ACTIONS § 4.01 (4th ed. 2008).   While only one of the conditions of
Rule 23(b) must be satisfied to merit class certification, if the class meets more than one of the
alternatives, the court may certify the action under each section satisfied. *See e.g.*, *Babcock v.
Computer Assocs. Int'l.,* 212 F.R.D. 126, 133 (E.D.N.Y. 2003) (granting class certification under
subsections 23(b)(1), (b)(2) and (b)(3) for breach of fiduciary duty claims).

### 1.      Certification under Rule 23(b)(1) is Proper

Under Rule 23(b)(1), a class may be certified if:

(1)      the prosecution of separate actions by or against individual members of the class
would create a risk of

> (A)      inconsistent or varying adjudications with respect to individual members
> of the class which would establish incompatible standards of conduct for
> the party opposing the class, or
>
> (B)      adjudications with respect to individual members of the class which would
> as a practical matter be dispositive of the interests of the other members
> not parties to the adjudications or substantially impair or impede their
> ability to protect their interests . . . .

FED. R. CIV. P. 23(b)(1).   Rule 23(b)(1)(A) "considers possible prejudice to the
defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re
Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (*quoting* Ikon, 191
F.R.D. at 466). Given the unique "group-based" relief offered under ERISA for violations of
fiduciary duties owed to participants in covered benefit plans, an action such as this one is a

textbook case for class treatment under Rule 23(b)(1).  *See In re Ikon Office Solutions, Inc.*, 191

F.R.D. 457, 466 (E.D. Pa. 2000) (citing *Feret v. CoreStates Fin. Corp.*, No. 97-CV-6759, 1998

U.S. Dist. LEXIS 12734 (E.D. Pa. Aug. 18, 1998)).

### (a)       Subsection (b)(1)(B)

Subsection (b)(1)(B) is the provision upon which many courts have relied in certifying a

class in similar cases, and it is appropriate for allegations of a breach of defendants' fiduciary

obligations to plaintiffs.  As stated in the Advisory Committee Notes accompanying the 1966

amendments to Rule 23:

> This [(b)(1)(B)] clause takes in situations where the judgment in a
> nonclass action by or against an individual member of the class,
> while not technically concluding[ ] the other members, might do so
> as a practical matter. . . .  ***[This] reasoning applies to an action
> which charges a breach of trust by an indenture trustee or other
> fiduciary similarly affecting the members of a large class of
> security holders or other beneficiaries, and which requires an
> accounting or like measures to restore the subject of the trust.***

FED. R. CIV. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment) (emphasis added);

*see also, In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 05-CV-1151, 2009 WL

331426, at *10 (D.N.J. Feb. 10, 2009); *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 346 (C.D.

Cal. 2005).

Indeed, a number of courts have accepted this reasoning in certifying a class in ERISA

cases alleging a breach of defendants' fiduciary obligations.  *See e.g., Zhu v. Schering Plough

Corp.*, No. 03-CV-1204, 2008 WL 4510039, at *5 (D.N.J. Sept. 30, 2008) (certifying ERISA

class under Rule 23(b)(1)(B)); *Shirk*, 2008 WL 4425535, at *5 (same); *see also Kane v. United

Indep. Union Welfare Fund,* No. 97-CV-1505, 1998 WL 78985, at *9 (E.D. Pa. Feb. 24, 1998).

*See, also, Rogers v. Baxter Int'l Inc.*, No. 04-CV-6476, 2006 WL 794734, at *9 (N.D. Ill. Mar.

22, 2006) ("[A]ctions under ERISA section 502(a)(2) are entirely different [from mass tort suits],

since such suits are representative by their very nature and the claim of any plan participant will necessarily dispose of other participants' claims, irrespective of whether or not a class is formally certified); *Syncor*, 227 F.R.D. at 346-347 ("If the primary relief is to the Plan as a whole, then adjudications with respect to individual members of the class would 'as a practical matter' alter the interests of other members of the class – if one plaintiff forces the Defendants to pay damages to the Plan, the benefit would affect everyone who has a right to disbursements from the Plan"); *WorldCom*, 2004 U.S. Dist. LEXIS 19786, at *8.   Because of ERISA's distinctive "representative capacity" and remedial provisions, this Action is a paradigmatic case for class treatment under Rule 23(b)(1)(B).

### (b)   Subsection (b)(1)(A)

After determining that a class of participants and beneficiaries seeking recovery from an ERISA fiduciary satisfies subsection (b)(1)(B) of Rule 23, some courts deem it unnecessary to reach the other potentially-applicable subsections of Rule 23(b).  *See, e.g., Koch v. Dwyer*, No. 98-CV-5519, 2001 U.S. Dist. LEXIS 4085, at *15 n.2 (S.D.N.Y. Mar. 23, 2001); *Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993).

However, certification of this Action is also appropriate under Rule 23(b)(1)(A).  *See e.g., Kanwai*, 254 F.R.D. at 111 (certifying an analogous ERISA breach of fiduciary duty action under Rule 23(b)(1)(A); *Alvidres v. Countrywide Fin. Corp.,* No. 07-CV-05810, 2008 WL 1766927 at *3 (C.D. Cal. Apr. 16, 2008) (same); *In re Aquila ERISA Litig.*, 237 F.R.D. 202, (W.D. Mo. 2006) (certifying class of analogous claims and finding: "Overall, the Court finds that prosecution of separate actions in this case would create the risk of inconsistent or varying adjudications with respect to individual members of the proposed Class and that certification under 23(b)(1)(A) is therefore appropriate.").

Other courts certify ERISA class actions under both subsections (b)(1)(B) and (b)(1)(A). *See, e.g., Abbott v. Lockheed Martin Corp.*, No. 06-CV-0701, 2009 WL 969713, at *9 (S.D. Ill. Apr. 3, 2009); *Rankin*, 220 F.R.D. at 522; *Broadwing,* 252 F.R.D. at 379; *Kolar v. Rite Aid Corp.*, No. 01-CV-1209, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 2003) (finding that "a (b)(1) class is a perfect vehicle for resolving complex ERISA issues such as these involved here."); *see also, Ikon*, 191 F.R.D. at 461 (finding that "[t]here is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material and would create difficulties in implementing such decisions.").  Therefore, if necessary, it is clear that the proposed Class could be certified under Rule 23(b)(1)(A).

Accordingly, Plaintiffs respectfully submit that certification under Rule 23(b)(1)(A) is appropriate here.

### F.     Plaintiffs Counsel easily meet the requirements of Rule 23(g)

Rule 23(g) requires the Court to examine the capabilities and resources of Plaintiffs' Counsel to determine whether they will provide adequate representation to the Class.  *See Aquila*, 237 F.R.D. at 213.  Rule 23(g)(1)(C) instructs that a court consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation; (3) claims of the type asserted in the action; (4) counsel's knowledge of the applicable law; and (5) the resources counsel will commit to representing the class, as well as any other matter pertaining to counsel's ability to fairly and adequately represent the interests of the class.  Plaintiffs' Counsel easily meet the dictates of Rule 23(g).

Here, Plaintiffs' Counsel have done substantial work to identify or investigate potential claims in this Action, and they refined the allegations in filing the Complaint. Plaintiffs' Counsel have investigated the allegations made in this Action by interviewing witnesses, reviewing publicly-available information, reviewing tens of thousands of pages obtained from Defendants, and consulting with experts. As described above, Plaintiffs' Counsel have substantial experience, individually and collectively, in handling class actions, other complex litigation, and claims of the type asserted in this Action. Hence, Plaintiffs' Counsel's extensive efforts in prosecuting this case, in combination with the in-depth knowledge of Plaintiffs' Counsel, satisfy Rule 23(g).

Therefore, for the purposes of effectuating this Settlement, this action should be certified as a class action under Rule 23 of the Federal Rules of Civil Procedure.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and request that this Court enter an Order (1) granting final approval of the Settlement Agreement, (2) certifying the proposed class for Settlement purposes, and (3) approving the proposed Plan of Allocation.

Dated: June 15, 2009

Respectfully submitted,

**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**

By: _____/s/ Edward W. Ciolko_____

Joseph H. Meltzer
Edward W. Ciolko
Mark K. Gyandoh
James A. Maro
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: 610-667-7056

*Lead Class Counsel for Plaintiffs*

Stephen Wasinger (P25963)
STEPHEN F. WASINGER PLC
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48073
Tel: (248) 554-6306
Fax: (248) 479-0391

*Liaison Counsel for Plaintiffs*

**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
32 East 57th Street
12th Floor
New York, New York 10022
Tel: (212) 421-6492
Fax: (212) 421-6553

**MOTLEY RICE, LLC**
Badge Humphries
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel: (800) 768-4026
Fax: (843) 216-9450

*Plaintiffs' Executive Committee*

49

**KAHN SWICK & FOTI, LLC**
Kevin Oufnac
650 Poydras Street
Suite 2150
New Orleans, LA 70130

**LAW OFFICES OF STUART J. GUBER LLC**
Stuart Guber, Esq.
4565 Bastion Drive
Roswell, GA 30075

**GAINEY & MCKENNA**
Thomas J. McKenna
295 Madison Avenue
4th Floor
New York, New York 10017

**LAW OFFICE OF ALFRED YATES**
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, Pennsylvania 15219
Tel: (412) 391-5164
Fax: (412) 471-1033

***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2009, I electronically filed Plaintiffs' Motion for Final Approval of Settlement, Certification of Settlement Class and Approval of the Plan of Allocation with the Clerk of the Court using the ECF system which will send notification of such filing to ECF participants.

/s/ Edward W. Ciolko
Edward W. Ciolko
BARROWAY TOPAZ KESSLER MELTZER
& CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: 610-667-7056