## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE LEAR CORP.<br>ERISA LITIGATION | MASTER FILE: 5:06-cv-11735<br><br>Judge Arthur J. Tarnow |
| THIS DOCUMENT RELATES TO: ALL<br>ACTIONS | |

## MOTION OF CLASS COUNSEL FOR AN AWARD
## OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CASE
## CONTRIBUTION COMPENSATION

Plaintiffs hereby move this Court, pursuant to FED. R. CIV. P. 23, for an Order: (i) granting Class Counsel attorneys' fees in the amount of $1,575,000.00 and expenses in the amount of $57,045.49; (ii) awarding compensation of $10,000.00 to each of the Named Plaintiffs in recognition of their case contribution; and (iii) for such other and further relief as the Court may deem just and proper. A proposed form of Order is attached hereto.

The grounds for this Motion are set forth in the following documents (filed contemporaneously herewith):

> A.   Memorandum of Law in Support of Plaintiffs' Motion for an Award of
>
>       Attorneys' Fees and Case Contribution Compensation.
>
> B.   Declarations of Plaintiffs' Counsel.[1]

---

[1] The Declarations of Plaintiffs' Counsel are filed as Exhibits F through L to the Declaration of Edward W. Ciolko, filed contemporaneously herewith.

Dated: June 15, 2009                    Respectfully submitted,

                                        **BARROWAY TOPAZ KESSLER MELTZER &**
                                        **CHECK, LLP**
                                        By:          /s/ Edward W. Ciolko
                                                     _____
                                             Joseph H. Meltzer
                                             Edward W. Ciolko
                                             Mark K. Gyandoh
                                             James A. Maro
                                             280 King of Prussia Road
                                             Radnor, PA 19087
                                             Tel: (610) 667-7706
                                             Fax: (610) 667-7056

                                        *Lead Class Counsel for Plaintiffs*

                                        Stephen Wasinger (P25963)
                                        STEPHEN F. WASINGER PLC
                                        300 Balmoral Centre
                                        32121 Woodward Avenue
                                        Royal Oak, MI 48073
                                        Tel: (248) 554-6306
                                        Fax: (248) 479-0391

                                        *Liaison Counsel for Plaintiffs*

                                        **SQUITIERI & FEARON, LLP**
                                        Stephen J. Fearon, Jr.
                                        32 East 57th Street
                                        12th Floor
                                        New York, New York 10022
                                        Tel: (212) 421-6492
                                        Fax: (212) 421-6553

                                        **MOTLEY RICE, LLC**
                                        Badge Humphries
                                        28 Bridgeside Blvd.
                                        Mt. Pleasant, SC 29464
                                        Tel: (800) 768-4026
                                        Fax: (843) 216-9450

                                        *Plaintiffs' Executive Committee*

**KAHN SWICK & FOTI, LLC**
Kevin Oufnac
650 Poydras Street
Suite 2150
New Orleans, LA 70130

**LAW OFFICES OF STUART J. GUBER LLC**
Stuart Guber, Esq.
4565 Bastion Drive
Roswell, GA 30075

**GAINEY & MCKENNA**
Thomas J. McKenna
295 Madison Avenue
4th Floor
New York, New York 10017

**LAW OFFICE OF ALFRED YATES**
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, Pennsylvania 15219
Tel: (412) 391-5164
Fax: (412) 471-1033

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE LEAR CORP. ERISA LITIGATION | MASTER FILE: 2:06-cv-11735 Judge Arthur J. Tarnow |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION**
**FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF**
**EXPENSES AND CASE CONTRIBUTION AWARDS**

**BARROWAY TOPAZ KESSLER**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer
Edward W. Ciolko
Mark K. Gyandoh
James A. Maro
280 King of Prussia Road
Radnor, PA 19087
Tel: 610-667-7706
Tel: 610-667-7056

*Lead Class Counsel for Plaintiffs*

**STEPHEN F. WASINGER PLC**
Stephen Wasinger (P25963)
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48073
Tel: 248-554-6306
Fax: 248-479-0391

*Liaison Counsel for Plaintiffs*

**MOTLEY RICE, LLC**
Badge Humphries
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel: (800) 768-4026
Fax: (843) 216-9450

**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
32 East 57th Street - 12th Floor
New York, New York 10022
Tel: 212-421-6492
Fax: 212-421-6553

*Plaintiffs' Executive Committee*

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND .....................................................................................................4

        A.      Description of the Litigation......................................................................4

        B.      Summary of the Litigation .........................................................................5

        C.      Discovery Undertaken ...............................................................................7

        D.      Settlement Negotiations............................................................................10

        E.      The Proposed Settlement ..........................................................................11

III.    REQUEST FOR ATTORNEYS' FEES ................................................................12

        A.      The Court Should Approve the Fee Requested By Class Counsel As Fair
                and Reasonable .........................................................................................12

        B.      Preference for Percentage of the Fund Approach to Fee Determination ...........13

        C.      Class Counsel's Fee Request Is Reasonable In Light of the Sixth Circuit's
                Criteria for Determining Appropriateness of Fee Requests..............................15

                1.      The Value of the Benefit Rendered to the Class....................................15

                2.      Society's Stake in Rewarding Attorneys who Produce such
                        Benefits in Order to Maintain an Incentive to Others............................19

                3.      Whether Class Counsel's Services were Undertaken on a
                        Contingent Fee Basis ...................................................................21

                4.      The Value of the Services on an Hourly Basis ......................................25

                5.      The Complexity of the Litigation .........................................................28

                6.      The Professional Skill and Standing of Counsel on Both Sides.............29

        D.      Awards In Similar Cases...........................................................................34

        E.      Lodestar Cross-Check and Multiplier.................................................35

        F.      Reimbursement and Payment of Class Counsel's Expenses .............................37

        G.      Case Contribution Awards For Named Plaintiffs

IV.     CONCLUSION........................................................................................................40

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*In re ADC Telecomms., Inc. ERISA Litig.*,
 No. 03-CV-2989, 2004 WL 1683144 (D. Minn. July 26, 2004) ......................................31, 35

*In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*,
 No. 02-CV-8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005) ..............................................31

*In Re: Bear Stearns Cos, Inc. Sec., Derivative, and ERISA Litig.*,
 No. 08-MD-1963, 2009 WL 50132 (S.D.N.Y. Dec. 29, 2008) ...............................................30

*In re Beazer Homes USA, Inc. ERISA Litig.*,
 No. 07-CV-00952-RWS (N.D. Ga. April 30, 2007)................................................................30

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
 No. 00-CV-584, 2004 WL 287902 (S.D. Ill. Jan. 22, 2004)...................................................39

*Bogosian v. Gulf Oil Corp.*,
 621 F. Supp. 27 (E.D. Pa. 1985) ...........................................................................................38

*Bowling v. Pfizer*,
 102 F.3d 777 (6th Cir. 1996) ..........................................................................................14, 25

*Brieger v. Tellabs, Inc.*,
 473 F. Supp. 2d 878 (N.D. Ill. 2007) ....................................................................................31

*Brieger v. Tellabs*,
 No. 06-CV-1882, 2009 WL 1565203 (N.D. Ill. June 1, 2009)..........................................24, 30

*In re Bristol-Myers Squibb Co. ERISA Litig.*,
 No. 02-CV-10129 (LAP) (S.D.N.Y.)................................................................................14, 32

*Camden I Condo. Ass'n v. Dunkle*,
 946 F.2d 768 (11th Cir. 1991) .........................................................................................13, 14

*In re Cendant Corp. PRIDES Litig.*,
 243 F.3d 722 (3d Cir. 2001)...................................................................................................35

*In re Cendant Corp. Sec. Litig.*,
 404 F.3d 173 (3d Cir. 2005)...................................................................................................14

*In re CIGNA Corp. ERISA Litig.*,
 No. 03-CV-00714 (E.D. Pa. Aug. 2, 2004).............................................................................31

ii

*In re CMS ERISA Litig.*,
   Master File No. 02-72834 (E.D. Mich June 27, 2006) ...........................................................35

*In re Constellation Energy, Inc. ERISA Litig.*,
   No. 08-CV-02662 (D. Md. Jan. 27. 2009) ..............................................................................30

*Crosby v. Bowater Inc. Ret. Plan for Salaried Employees of Great N. Paper, Inc.*,
   262 F. Supp. 2d 804 (W.D. Mich. 2003) ................................................................................21

*In re Delphi Corp Securities, Derivative and "ERISA" Litig..*,
   248 F.R.D. 483 (E.D. Mich. 2008) .........................................................................................24

*In re Diebold ERISA Litig.*,
   No. 06-CV-0170, 2008 WL 2225712 (N.D. Ohio May 28, 2008) ..........................................31

*DiFelice v. U.S. Airways, Inc.*,
   436 F. Supp. 2d 756 (E.D. Va. 2006), *affirmed,* 497 F.3d 410 (4th Cir. 2007)......................24

*Dresslar v. Wellpoint, Inc.*,
   No. 08-CV-00679-DFH-TAB (S.D. Ind. May 22, 2008) ........................................................30

*In re Dun & Bradstreet Credit Services Customer Litig.*,
   130 F.R.D. 366 (S.D. Ohio. 1990) ..........................................................................................39

*Eltman v. Grandma Lee's Inc.*,
   No. 82-CV-1912, 1986 U.S. Dist. LEXIS 24902 (E.D.N.Y. May 28, 1986) ..........................20

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
   137 F.R.D. 240 (S.D. Ohio 1991) ...........................................................................................36

*Evans v. Akers,*
   534 F.3d 65 (1st Cir. 2008) .....................................................................................................31

*Falk v. Amerada Hess Corp.*,
   No. 03-CV-2491 (D.N.J. May 10, 2004) .................................................................................31

*In re 2008 Fannie Mae ERISA Litig.*,
   No. 09-CV-01350, MDL No. 2013 (S.D.N.Y. May 15, 2009)..................................................30

*Feerer v. Amoco Prod. Co.*,
   242 F.3d 1259 (10th Cir. 2001) ...............................................................................................38

*In re First Am. Corp. ERISA Litig.*,
   No. 08-CV-01357, 2008 WL 5666637 (C.D. Cal. July 14, 2008)...........................................31

*In re First Am. Corp. ERISA Litig.*,
   No. 08-CV-01357-JVS-RNB (C.D. Cal. Nov. 16, 2007) ........................................................30

*In re Ford Motor Co. ERISA Litig.*,
   No. 06-CV-11718, 2008 WL 5377955 (E.D. Mich. Dec. 22, 2008) ......................................31

*Gee v. UnumProvident Corp.*,
   No. 03-CV-0147, 2005 WL 534873 (E.D. Tenn. Jan. 13, 2005)............................................31

*Gee v. UnumProvident Corp.*,
   No. 03-CV-1552 (E.D. Tenn. Sept. 3, 2003) .........................................................................30

*Geier v. Sundquist*,
   372 F.3d 784 (6th Cir. 2004) ................................................................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y 2004) ..................................................................................... passim

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).....................................................................................................13

*Goldberger v. Integrated Res. Inc.*,
   209 F.3d 43 (2d Cir. 2000).....................................................................................................13

*Grosick v. Nat'l City Corp.*,
   No. 08-CV-00144-PAG (N.D. Ohio Jan. 17, 2008) ..............................................................30

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ................................................................................................13

*Hill v. BellSouth Corp.*,
   313 F. Supp. 2d 1361 (N.D. Ga. 2004) .................................................................................31

*In re Honeywell ERISA Litig.*,
   No. 03-CV-1214 (D.N.J. July 19, 2005) .........................................................14, 30, 31, 37

*In re Household Int'l, Inc. ERISA Litig.*,
   No. 02-CV-07921 (N.D. Ill. Nov. 22, 2004).............................................................35, 37, 39

*In re Huntington Bancshares Inc. ERISA Litig.*,
   No. 08-CV-0165, 2009 WL 330308 (S.D. Ohio Feb. 9, 2009) .........................................23, 24

*In re Cincinnati Microwave Inc. Sec. Litig.*, Consolidated
   Master File No. C-1-95-905 (S.D. Ohio Mar. 21, 1997) .......................................................34

*In re Linerboard Antitrust Litig.*,
   MDL No. 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .................................................39

*In re JDS Uniphase Corp. ERISA Litig.*,
   No. 03-CV-4743, 2005 WL 1662131 (N.D. Cal. July 14, 2005).............................................31

*Johnston v. Comerica Mortgage Corp.*,
   83 F.3d 241 (8th Cir. 1996) ....................................................................................13

*Kirschbaum v. Reliant Energy, Inc.*,
   526 F.3d 243 (5th Cir. 2008) ..................................................................................23

*Kling v Fidelity Mgmt. Trust Co.*,
   No. 01-CV-11939 (D. Mass. June 29, 2006) .........................................................35

*Koch v. Dwyer*,
   No. 98-CV-05519 (S.D.N.Y. May 7, 2002).............................................................35

*Koch v. Loral Space & Commc'ns Ltd.*,
   No. 03-CV-9729 (S.D.N.Y. Dec. 8, 2003) ..............................................................30

*Kogan v. Aimco Fox Chase, L.P.*,
   193 F.R.D. 496 (E.D. Mich. 2000) .........................................................................21

*Kolar v. Rite Aid Corp*,
   No. 01-CV-1229, 2003 U.S. Dist. LEXIS 3646 (E.D. Pa. Mar. 11, 2003)..............37

*Landgraff v. Columbia Healthcare Corp.*
   No. 98-CV-0090, 2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000),
   *affirmed,* 30 Fed. Appx. 366 (6th Cir. 2002) ........................................................24

*In re Lear ERISA Litig.*,
   No. 06-CV-11735 (E.D. Mich. Apr. 10, 2006) .................................................30, 31

*Lewis et al. v. El Paso Corp.*,
   No. H-02-4860 (S.D. Tex) .......................................................................................32

*In re Lincoln Nat'l Corp. ERISA Litig.*,
   No. 08-CV-5740 (E.D. Pa. June 4, 2009) ...............................................................30

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D. D.C. 2002)..........................................................................18, 19

*In re Lucent Technologies, Inc. Securities Litig.*,
   327 F. Supp. 2d 426 (D.N.J. 2004) .........................................................................37

*Manners v. Am.Gen. Life Ins. Co.*,
   No. 98-CV-266, 1999 U.S. Dist. LEXIS 22880 (M.D. Tenn. Aug. 11, 1999) ........36

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 679 (M.D. Ala. 1988) ........................................................................20

*Mehling v. New York Life Insurance Co., et al.*
   248 F.R.D. 455 (E.D. Pa. 2008)........................................................................34, 39

*In re: Merck & Co., Inc. Sec. Derivative & ERISA Litig.*,
   No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006)...................................31

*In re Mirant Corp. ERISA Litig.*,
   No. 03-CV-1027-RWS (N.D. Ga. Nov. 16, 2006) ...........................................35, 37

*Nelson v. IPALCO Enterprises, Inc.*.
   480 F. Supp. 2d 1061 (S.D. Ind. 2007), *affirmed*, 512 F.3d 347 (7th Cir. 2008) ...................24

*In re Newbridge Networks Sec. Litig.*,
   No. 94-CV-1678, 1998 U.S. Dist. LEXIS 23238 (D.D.C. Oct. 22, 1998) ............................28

*Nowak v. Ford Motor Co.*,
   240 F.R.D. 355 (E.D. Mich. 2006) ........................................................30

*Oh v. AT & T Corp.*,
   225 F.R.D. 142 (D.N.J. 2004)............................................................38

*In re: Pixelplus Co., Ltd.*,
   No. 06-CV-02951 (S.D.N.Y.)..............................................................33

*In re Polaroid ERISA Litig.*,
   362 F. Supp. 2d 461 (S.D.N.Y. 2005).....................................................31

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir 1974) .......................................................15, 33

*Rankin v. Rots*,
   Case No. 02-CV-71045, 2006 WL 1791377 (E.D. Mich. June 27, 2006)...................... passim

*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993) .....................................................13, 35, 36

*In re Raytheon ERISA Litig.*,
   No. 03-CV-10940-RGS (D. Mass. Mar. 19, 2003)...........................................30

*In re Remeron Direct Purchaser Antitrust Litigation*,
   No. 03-CV-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ............................13, 39

*Riccio v. Huntington Bancshares Inc.*
   No. 08-CV-00165-GLF-TPK (S.D. Ohio Feb. 20, 2008).....................................30

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
   No. MDL 1053, 1996 WL 780512 (E.D. Mich. Dec. 20 1996)............................3, 21

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)............................................................34

*In re Schering Plough Corp.*,
    No. 03-CV-1204, 2008 WL 4510039 (D.N.J. Sept. 30, 2008) ...................................16, 22, 30

*In re Schering-Plough Corp. ERISA Litig.*,
    420 F.3d 231 (3d Cir. 2005).................................................................................................31

*In re Sears, Roebuck & Co. ERISA Litig.*,
    No. 02-CV-8324, 2004 WL 407007 (N.D. Ill. March 3, 2004)..............................................31

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ...............................................................................................13

*In re: SLM Corp. ERISA Litig.*,
    No. 08-CV-4334 (S.D.N.Y. Sept. 30, 2008).........................................................................30

*Smillie v. Park Chem. Co.*,
    710 F.2d 271 (6th Cir. 1983) ...........................................................................................14, 20

*Smith v. Krispy Kreme Doughnut Corp.*,
    No. 05-CV-00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) .....................................28, 37

*Spivey v. Southern Company*,
    No. 04-CV-1912-RWS (N.D. Ga. August 11, 2007)..............................................................35

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006)...............................................................................25, 28

*Summers v. State Street*,
    453 F.3d 404 (7th Cir. 2006) ...................................................................................17, 22, 23

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993)...........................................................................................13, 14

*In re Syncor ERISA Litig.*,
    351 F. Supp. 2d 970 (C.D. Cal. 2004) ...................................................................................31

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ...............................................................................................31

*In re Telectronics Pacing Systems, Inc.*,
    137 F. Supp. 2d 1029 (S.D. Ohio 2001) ...........................................................................21, 37

*Thornton v. E. Tex. Motor Freight*,
    497 F.2d 416 (6th Cir. 1974) .................................................................................................38

*UAW v. Gen. Motors Corp.*,
    No. 05-CV-73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ........................................16

*In re Union Carbide Corp. Consumer Products Business Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................35

*Van Vranken v. Atlantic Richfield Co.,*
901 F. Supp. 294 (N.D. Cal. 1995) ..........................................................39

*In re Visteon Corp. ERISA Litig.,*
No. 05-CV-71205 (E.D. Mich. Mar. 9, 2007) ........................................34

*In re Warner Communications Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ..........................................................33

*In re Westar Energy Inc. ERISA Litig.*,
No. 03-CV-4032 (D. Kan. Mar. 7, 2003)............................................30, 35

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ...................................................................16

*Woods v. Southern Co.*,
396 F. Supp. 2d 1351 (N.D. Ga. 2005) ....................................................31

*In re WorldCom, Inc. ERISA Litig.*,
No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. October 18, 2004)....................20

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,*
364 F. Supp. 2d 980 (D. Minn. 2005).......................................................14

*In re Xerox Corp. ERISA Litig.,*
No. 02-CV-1138 (D. Conn. Apr. 14, 2009) ..............................................34

*In re Xethanol Corp. Sec. Lit.*,
No. 06-CV-10234 (S.D.N.Y.) ...................................................................33

*Yap v. Sumitomo Corp. of America,*
No. 88-CV-700, 1991 WL 29112 (S.D.N.Y. Feb. 22, 1991)....................39

### FEDERAL STATUTES

29 U.S.C. § 1132(a) .......................................................................................20

29 U.S.C. § 1132(a)(2)..............................................................................4, 31

### RULES

FED. R. CIV. P. 24(A)(2) and 24(B) .................................................................................19

FED R. CIV. P. 26(a) ........................................................................................................7

FED. R. CIV. P. 30(b)(2) and (6) ................................................................................9, 26

## I.    INTRODUCTION

Contemporaneously with the submission of their motion for final approval of the Settlement Agreement[1] in this matter, Class Counsel[2] respectfully submit this Memorandum in Support of their Motion for an Award of Attorneys' Fees inclusive of expenses, and Case Contribution Awards.  The motion seeks an award of attorneys' fees of 30% ($1,575,000.00) of the Settlement Amount of $5.25 million and reimbursement of out-of-pocket costs and expenses.[3]  The $5.25 million Settlement Amount will be paid to the Lear Corporation Salaried Retirement Savings Plan ("Salaried RSP"), the Lear Corporation Hourly Retirement Savings Plan ("Hourly RSP"), and the Lear Corporation Hourly 401(k) Savings Plan ("Hourly 401(k)") (collectively the "Plans" or "Plan").  Class Counsel also request that the Court to approve the payment of case contribution awards in an amount of $10,000.00 for each Named Plaintiff.[4]

After years of hard-fought litigation the parties to this matter executed the Settlement Agreement on March 6, 2009.  Class Counsel fought and negotiated vigorously for the Class, ultimately achieving a recovery through settlement that is exceptional particularly in light of the potential damages and litigation risks present in this case.  The award of attorneys' fees that Class Counsel seek is compensation for their efforts in bringing this action to a favorable

---

[1]  The Settlement Agreement is attached as Exhibit A to the "Ciolko Decl." (defined below).  The provisions of the Settlement Agreement, including all definitions and defined terms, are incorporated by reference herein.  Thus, all capitalized terms not otherwise defined in this Memorandum of Law shall have the same meaning as ascribed to them in the Settlement Agreement.

[2]  Class Counsel are Barroway Topaz Kessler Meltzer & Check, LLP, Squitieri & Fearon, LLP, Motley Rice, LLC, Law Office of Alfred G. Yates Jr., PC, Kahn Swick & Foti, LLC, Law Offices of Stuart J. Guber, Esq., Gainey & McKenna, and Stephen F. Wasinger PLC.

[3]  For the Court's convenience a copy of a [Proposed] Order Awarding Plaintiffs' Counsel Attorneys' Fees and Reimbursement of Expenses and Plaintiffs' Case Contribution Awards is attached to the accompanying Motion.

[4]  The "Named Plaintiffs" in this action are: Deborah Berry, John Blecha, Michael Malloy, and Boyd White.

conclusion and for undertaking the considerable risks associated with prosecuting this Action with no guarantee of receiving any compensation at all.[5]

Indeed, Class Counsel undertook great risk in the prosecution of this action.  There is no doubt that lawsuits of this type brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") face significant risks as they involve complex and still evolving law.  As detailed below, the risks included the very real possibility that, despite their best efforts, the Class would have received *less* monetary damages than the Settlement Amount or even nothing at all if this case proceeded through trial.  In fact, to the best of Class Counsel's knowledge, no plaintiff has ever succeeded at trial in any ERISA company-stock class actions alleging breach of fiduciary duties.  Additionally, Defendants took significant corrective steps to protect the Plan and its participants by beginning divestment of Lear common stock in the Plan during the proposed Class Period.  In sum, Plaintiffs are proud of the Settlement achieved and believe this to be an excellent result.

Despite the attendant risks involved in bringing the Action, Class Counsel thoroughly investigated the merits of, and then filed, this Action.  In the end, this Settlement was achieved by the skill, creativity, perseverance and hard work of Class Counsel and offers significant relief for the Plans and their participants.  The extensive efforts of Class Counsel in achieving this excellent result are summarized below and described in (1) the Declaration of Edward W. Ciolko in Support of Plaintiffs' Motion for Final Approval of Settlement, Certification of Settlement Class and the Approval of the Plan of Allocation, and Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards (the "Ciolko

---

[5] It should also be noted that the fee requested herein does not reflect the significant, ongoing  role Class Counsel will undertake in the administration of the Settlement

Declaration" or "Ciolko Decl.") filed herewith and the (2) Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement, Certification of Settlement Class, and Approval of the Plan of Allocation ("Final Approval Mem.").[6]

The requested fee of 30% of the total recovery is justified under the factors considered by courts in this Circuit in determining fee awards.  *See, e.g.*, *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1053, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20 1996) (noting that fee awards are "typically . . . 20 to 50 percent of the fund").  Moreover, the fee request is plainly appropriate in light of the fact that the lodestar cross-check yields a very modest multiplier of 1.0052.  In addition, after mailing the approved form of Notice to 17,407 Class Members and publishing the Summary Notice in the *USA Today*, Class Counsel received ***only one*** objection to their application for a fee award.[7]  Class Counsel is in fact seeking an amount of attorneys' fees which is less than the 33% they represented in the Notice that they could seek from the Court without objection from Defendants.  By only filing one objection, the Class members have demonstrated their belief that the requested attorneys' fees, expenses and Named Plaintiff Case Contribution awards are fair and reasonable.

For all of the following reasons, Class Counsel respectfully submit that the Court should approve the request for fees, expenses and the Case Contribution awards as fair and reasonable.

---

[6] Plaintiffs fully incorporate the contents of the Final Approval Mem. into the instant submission, including the terms defined formally therein.

[7] Two other objections were received with regard to the terms of the Settlement.  All three objections received are discussed in more detail below and in the Final Approval Mem.

## II.    BACKGROUND

### A.    Description of the Litigation

This litigation commenced on April 10, 2006, when Named Plaintiff Michael Malloy filed a class action complaint asserting breach of fiduciary duty claims against Defendants under ERISA.  Named Plaintiff John Blecha filed a complaint averring similar allegations on May 10, 2006.  Named Plaintiffs Boyd White and Deborah Berry filed related actions on May 12, 2006 and June 15, 2006, respectively.  On June 30, 2006, this Court entered a Case Management Order consolidating the four actions and directing Named Plaintiffs to file a consolidated complaint.  *See* Docket No. 8.  Named Plaintiffs filed the Consolidated Amended Class Action Complaint on September 20, 2006.  *See* Docket No. 11 (the "Complaint").  The detailed allegations of the Complaint were developed following continued and thorough investigation of Named Plaintiffs' claims, including a review of Plan-related documents, informal discovery, and documents produced by Defendants regarding the Plans and the fiduciaries of the Plans.  Counsel for Plaintiffs also analyzed specific corporate transactions involving Lear, reviewed Lear's federal and state regulatory filings, and conducted interviews of witnesses and Plan participants.

Named Plaintiffs brought their claims pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), on behalf of themselves and participants in the Plans during the period of October 21, 2004 to the present, and whose accounts included investments in the Lear Stock Fund, a fund containing primarily Lear common stock.  The Complaint asserted four claims against the Defendants and/or various subsets of the Defendants pursuant to ERISA § 409.  These claims were the (i) failure to prudently and loyally manage Plan assets, (ii) failure to monitor appointed Plan fiduciaries and provide them with accurate information, (iii) failure to provide complete and accurate information to Plan participants, and (iv) failure to avoid conflicts of interest, in violation of ERISA.  As set forth in greater detail in the Complaint, Plaintiffs alleged that

4

Defendants, who were fiduciaries of the Plans, breached their duties to the Plans, Plaintiffs and the Plans' participants in violation of ERISA (and related Department of Labor ("DOL") regulations) with regard to the Plans' continued, significant investment in Lear common stock.

The Complaint alleges that Defendants breached their fiduciary duties by, *inter alia*, selecting and maintaining the Stock Fund as a Plan investment alternative; permitting the Plans to purchase and hold shares of the Lear common stock; and permitting the Stock Fund to purchase and hold shares of Lear common stock when it was imprudent to do so.  The heavy investment in Lear common stock was imprudent given the numerous material risks faced by the Company, which Defendants either knew or should have been aware.  These risks included, *inter alia*, the collapse of Lear's business model, increased pricing pressure from both the Company's suppliers and customers, the overall decline in the automotive manufacturing market, and Lear's receipt of Securities and Exchange Commission ("SEC") subpoenas regarding the Company's accounting practices for transactions with General Motors ("GM").  According to Named Plaintiffs, and the allegations in the Complaint, such risks invariably caused Lear common stock to become an imprudent investment alternative for the Plans.

The Named Plaintiffs further alleged that Defendants failed to appropriately monitor the other Defendant-fiduciaries; provided incomplete and inaccurate information to the Plans' participants regarding the prudence of investing in Lear common stock; and certain Defendants failed to act solely in the interest of the Plans' participants.

### B.      Summary of Litigation

Defendants vigorously contested this complex litigation from the outset and were represented by highly reputable lawyers who aggressively defended Plaintiffs' claims and immediately sought to have the Court dismiss the Complaint.   On November 20, 2006

5

Defendants filed their Motion to Dismiss the Complaint (*see* Docket No. 14 ("Motion to Dismiss")) and supported their Motion to Dismiss with arguments which, if successful, could have dramatically limited the scope of Plaintiffs' claims or led to outright dismissal of the Action.  Defendants asserted that:  (1) they could not be held liable for continuing to offer Lear common stock as an investment alternative and investing Plan assets in Lear common stock; (2) Plaintiffs failed to overcome the presumption that Defendants' acted prudently by deciding to offer Lear common stock as an investment alternative and to invest assets in Lear common stock; (3) Plaintiffs' "failure to monitor" claim failed because Plaintiffs did not allege that Defendants made any affirmative misrepresentations with respect to the Plans or their investments; (4) Defendants had no duty under ERISA to disclose actual or potential events that could affect the value of the Company's stock; and (5) Plaintiffs failed to state a claim for Defendants' failure to avoid conflicts of interests.

Following full briefing and a contentious hearing on the Motion to Dismiss, the Court rejected Defendants' arguments and entered an Order on June 28, 2007, upholding the sufficiency of the Complaint as to all claims.  *See* Docket No. 28.  On August 2, 2007, Defendants filed their Answer to the Complaint (*see* Docket No. 33) and generally denied each of Plaintiffs' claims and asserted numerous affirmative defenses.

On March 27, 2008, Plaintiffs filed their Motion for Class Certification.  *See* Docket No. 45 ("Motion to Certify").  Plaintiffs' Motion to Certify was still pending when the Settlement Agreement was reached.  Defendants had not yet filed a response to Plaintiffs' Motion to Certify at the time of Settlement.

### C. Discovery Undertaken

In addition to Defendants' informal production of documents prior to the filing of the Complaint, in the fall of 2007, after Defendants answered the Complaint, Defendants produced certain information related to the measure of losses alleged by Plaintiffs, including information concerning the Plans' holdings and transactions in Lear common stock during the Class Period. Plaintiffs sought this information to assist them in establishing their claims, as well as for purposes of formulating a settlement demand. In fact, at the hearing on the Motion to Dismiss, the Court encouraged the parties to attempt to settle the Action in a way that made sense for both sides:

> I'm trying to figure out if there's a way to resolve it now that would make your clients whole and save your clients and Lear's clients – or Lear from the cost of a fairly large piece of litigation.

*In re Lear Corp. ERISA Litig.*, Tr. of Motion to Dismiss Consolidated Complaint Hearing, June 27, 2007 (E.D. Mich.) (Minute Entry).

After that hearing, Plaintiffs continued to gather evidence to support their claims.[8] The parties exchanged initial discovery disclosures pursuant to FED R. CIV. P. 26(a) and engaged in discovery regarding class certification issues and further discovery concerning the Plans and merits-related issues.

In addition, from early December 2007 through mid-February 2008, the Parties engaged in motion practice concerning the Company's proposed implementation of a new document retention policy that threatened to destroy millions of documents. At the Court's suggestion, counsel for the Parties negotiated a resolution to modify Lear's document retention and

---

[8] Defendants' discovery efforts commenced as well. On January 8, 2008, Defendants served their First Set of Interrogatories to Plaintiffs and First Request for Production of Documents.

destruction policy without jeopardizing documents that could be relevant to the claims or defenses in the Action.   Eventually, as a result of Plaintiffs' efforts, the Parties agreed that Defendants would delay implementing their new document retention policy until after the close of fact discovery, effectively protecting millions of pages of documents from immediate destruction.

After concluding those efforts, Plaintiffs moved diligently and served Defendants with written discovery, served non-party subpoenas, and scheduled depositions of Defendants and non-parties.   Specifically, on March 13, 2008, Plaintiffs served Defendants with two sets of document requests.   The first set of document requests concerned additional Plan-related or ERISA-specific documents.   The second set of document requests addressed the allegations of the Complaint dealing with the underlying factual predicate for Plaintiffs' imprudence claim – the alleged corporate malfeasance and mismanagement of Lear.   Further, on March 20, 2008, Plaintiffs served Interrogatories to Defendants Lear, the Director Defendants and the Employee Benefits Committee.   During this time, Plaintiffs also responded with Answers and Objections to Defendants' Requests for Production of Documents and First Set of Interrogatories.   Plaintiffs, with the aid of Counsel, spent significant time in responding to these extensive Interrogatories. On March 31, 2008, Defendants filed a motion to compel Plaintiffs to respond fully to their written discovery requests which Plaintiffs vigorously contested.   *See* Docket No. 46 ("Motion to Compel"). [9]

In April, Plaintiffs began to serve Notices of Deposition on Defendants.   On April 11, 2008, Plaintiffs served Notices of Deposition on Defendants David Wajsgras, Cynthia Stolber

---

[9] On June 5, 2008, this Court granted in part and denied in part Defendants' Motion to Compel. *See* Docket No. 58 ("June 5, 2008 Order"). Pursuant to the June 5, 2008 Order, Plaintiffs prepared and served supplemental responses to Defendants' Interrogatories.

and William Dircks.  On April 14, 2008, Plaintiffs served Notices of Depositions on Defendants Shari Burgess and William McLaughlin.  As discussed below, the Parties agreed to stay the Action to allow the Parties to participate in mediation.  Following the temporary stay of discovery, Plaintiffs continued their discovery efforts by serving Amended Notices of Depositions on the Defendants identified above and further served Notices of Deposition on Defendants Roger Jackson, Robert Rossiter, Michael Miller, Thomas Polera, Janet Stern, Conrad Mallett, David Fry and Larry McCurdy.

Throughout the discovery process, Plaintiffs also served subpoenas *duces tecum* on the Plans' two trustees, Reliance Trust Company and Northern Trust Company, as well as upon the auditor for Lear and the Plans, Ernst & Young LLP.  Plaintiffs also served FED. R. CIV. P. 30(b)(2) and (6) Notices on Lear's principal customers: Ford Motor Company ("Ford"), GM, and Chrysler, LLC (formerly known as DaimlerChrysler Corp.) as well as upon certain of Lear's suppliers[10] in an effort to obtain information supporting Plaintiffs' claims.  In late June 2008, counsel for Defendants deposed all four Named Plaintiffs.  Class Counsel along with Named Plaintiffs prepared extensively for these depositions.

During the course of discovery, tens of thousands of pages of documents were produced by Defendants which Plaintiffs, through their Counsel, reviewed.  Moreover, Class Counsel extensively reviewed publicly available documents, hundreds of pages of a Plan documents, including master Plan documents, Summary Plan Descriptions, and Summary Material Modifications, documents filed with the SEC and publicly available analysts reports.  All of this information served to augment the significant amount of information Plaintiffs had accumulated

---

[10] For example, Plaintiffs served FED. R. CIV. P. 30(b)(2) and (6) Notices on Canadian General Tower, Shawmut Mills, Guilford, Sandusky Athol International, General Electric Company, Woodbridge Foam Corporation, Foamex International, Inc., and Canadian General – Tower Limited.

from their own investigation.  Plaintiffs' Counsel also drew on their extensive knowledge of ERISA law with respect to fiduciary duties relating to the investment of company stock in defined contribution plans to plead the case as strongly as possible, including with reference to the factual results of their investigation.

### D.    Settlement Negotiations

From time to time during the litigation and throughout the Parties' discovery efforts, counsel for the Parties explored the idea of whether an amicable resolution of Plaintiffs' claims could be reached.  As the Parties contemplated a possible settlement, both sides eventually agreed that utilizing a neutral third party with significant experience resolving complex, multi-party class actions would be constructive.  In April 2008, the Parties ultimately decided to utilize the services of Gary V. McGowan, Esq. of McGowan Dispute Resolution to mediate the case. On April 28, 2008, this Court executed the Parties' Stipulation and Order Staying Case Pending Mediation.  *See* Docket No. 53.  On May 12, 2008, the Parties attended a full-day mediation session with Mr. McGowan in Chicago.  In preparation for this mediation, Plaintiffs engaged in time-consuming research, damage analyses and litigation review, culminating in the drafting and submission of a comprehensive mediation memorandum which included a thorough analysis of Plaintiffs' claims, potential losses and insurance coverage issues.  Plaintiffs' mediation memorandum supported Plaintiffs' allegations by referring to the evidence that Plaintiffs had amassed against Defendants.  Defendants also submitted a detailed mediation memorandum which presented their defenses to Plaintiffs' claims, supported by evidence.

The mediation before Mr. McGowan was contested but productive, especially because it offered the parties a chance to share their views of the evidence and highlight the strengths and weaknesses of each claim and defense.  Although settlement was not reached at or immediately

following the mediation session, the Parties continued settlement discussions, with the further assistance of Mr. McGowan for several months.  At all times, counsel for the Parties engaged in spirited negotiations and kept the Court and the mediator informed of their progress.

After the parties made further progress, this Court held a settlement conference on July 9, 2008.  During that conference, with the Court's assistance, the Parties made great strides towards reaching an agreement in principle to settle the Action in the amount of $5,250,000.00.  Following this settlement conference, and the Court's recommendation, the Parties continued their negotiations regarding the specific terms of the Settlement Agreement, the scope of the release, the definition of the class, and other important and necessary terms of the proposed Settlement and eventually agreed on the principal terms of a proposed Settlement.  Lastly, counsel for the Parties engaged in multiple exchanges of information and dialogue with Fiduciary Counselors regarding the terms of the Settlement and Class Counsel's fee request.

### E.    The Proposed Settlement

As noted above, the terms of the Settlement are memorialized in the Settlement Agreement, a copy of which is attached as Exhibit A to the accompanying Ciolko Declaration and was filed together with the Plaintiffs' Motion for Preliminary Approval of Settlement, Conditional Certification of Class for Settlement Purposes, and Approval of Notice Plan ("Motion for Preliminary Approval").

The Settlement Agreement provides that Defendants shall pay the sum of $5.25 million into a Settlement Fund.  The Net Proceeds of the Settlement Fund (after deductions of attorneys' fees, expenses and any Case Contribution Award as well as the expenses to administer the Settlement) will be allocated among the Settlement Class in accordance with the Plan of

Allocation as set forth in the Settlement Agreement and Exhibit C thereto, and as described in this Memorandum of Law.

Pursuant to the Settlement, the Plans and the Settlement Class will release all claims in this Action, as well as "any and all claims and causes of action that could have been brought against any Defendants in the Action, and claims that would be barred by principles of *res judicata* had the claims asserted in the Complaint been fully litigated and resulted in a Final judgment or order." *See* Settlement Agreement, Section 3.2.

Furthermore, pursuant to the Settlement Agreement, an independent fiduciary, Fiduciary Counselors has been retained to evaluate the fairness and adequacy of the Settlement. Class Counsel anticipates Fiduciary Counselors will approve the Settlement.

## III.   REQUEST FOR ATTORNEYS' FEES

### A.   The Court Should Approve the Fee Requested By Class Counsel As Fair and Reasonable

Class Counsel are entitled to compensation based upon the benefits conferred on the Class. Class Counsel respectfully request that the Court award attorneys' fees in the amount of $1,575,000.00 and authorize reimbursement of Counsel's costs and litigation expenses in the amount of $57,045.49. The requested fee represents 30 percent of the $5.25 million Settlement or **1.021** times Class Counsel's fees incurred or "lodestar" to date (also known as the "lodestar multiplier" though here, the term "multiplier" is a misnomer given the 1.021 figure).

This fee request is reasonable and appropriate given the extensive work performed, the excellent result achieved, and the significant risks undertaken by Class Counsel.

### B.   Preference for Percentage of the Fund Approach to Fee Determination

There are two prevailing methods for calculating appropriate attorneys' fees in common fund cases: the percentage-of-the-fund method and the lodestar/multiplier method. The

12

percentage method requires the court to determine counsel's fee based on what it determines is a reasonable percentage of the fund recovered for those benefited by the litigation, while the lodestar method requires the court to determine the number of hours reasonably expended multiplied by a reasonable hourly rate. *See, e.g.*, *Geier v. Sundquist*, 372 F.3d 784, 790-791 (6th Cir. 2004). The Manual for Complex Litigation also endorses the use of the percentage of the fund method in awarding attorneys' fees in common fund cases. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MANUAL") 14.21 at 187 (2004) (commenting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases"). Additionally, practically every Court of Appeals across the nation that has addressed the issue has approved the percentage-of-the-fund method.[11]

In recognition of their skill, extensive efforts and the excellent result achieved for the Class, and consistent with the law in the Sixth Circuit, Class Counsel request an award of attorneys' fees from the common fund created in this Action pursuant to the "percentage of the fund" method. The Sixth Circuit has endorsed the common fund percentage approach and noted the national trend toward utilizing this method of calculating reasonable attorneys' fee requests. *See Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993). It has also recognized the "lodestar-multiplier" method as sometimes more appropriate: "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516.

---

[11] *See In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 47-49 (2d Cir. 2000); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). In fact, the use of the percentage-of-the-fund

13

Courts evaluating attorneys' fee requests relating to settlement of large, complex class actions such as the one at bar sometimes use the latter method as a "cross-check" of the former. *See, e.g.*, *Bowling v. Pfizer*, 102 F.3d 777, 780 (6th Cir. 1996); *Smillie v. Park Chem. Co.,* 710 F.2d 271, 275 (6th Cir. 1983); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 (3d Cir. 2005); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 364 F. Supp. 2d 980, 999 (D. Minn. 2005). Under either measure, Class Counsel's requested fees are eminently reasonable and in line with awards in similarly large and complex class actions settlements.

Further, payment of attorneys' fees from a common fund created is appropriate in ERISA breach of fiduciary duty class actions such as this case. By their very nature, class actions brought pursuant to ERISA §§ 409, 502(a)(2) seek relief on behalf of a retirement pension plan. Any recovery naturally flows to that plan, and concomitantly its participants and beneficiaries, thereby benefiting a large group of individuals. Courts have not hesitated to award attorneys' fees based on the common fund doctrine in similar actions. *See, e.g.*, *Rankin v. Rots*, Case No. 02-CV-71045, 2006 WL 1791377, at *2 (E.D. Mich. June 27, 2006) ("The percentage of the fund is the preferred method in this ERISA case, as it most closely approximates how lawyers are paid in the private market and provides an incentive to lawyers to maximize the Class recovery, but in an efficient manner."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y 2004), *In re Bristol-Myers Squibb ERISA Litig.*, No 02-CV-10129 (S.D.N.Y.); *In re Honeywell ERISA Litig.*, No. 03-CV-1214 (D.N.J. July 19, 2005) (attached to the Ciolko Decl. as Ex. N); *In re Xcel Energy, Inc.,* 364 F. Supp. 2d 980 (D. Minn. 2005).

---

method is required in common fund cases in the Eleventh and District of Columbia Circuits. *See Camden I*, 946 F.2d at 774; *Swedish*, 1 F.3d at 1271.

**C.   Class Counsel's Fee Request Is Reasonable In Light of the Sixth Circuit's Criteria for Determining Appropriateness of Fee Requests**

Class Counsel requests $1,575,000.00 in fees, representing 30% of the Class Settlement Amount, plus $56,908.55 for reimbursement of out-of-pocket costs and expenses.   For the reasons that follow, these requests are fair and reasonable under the relevant standards and should be awarded in this case.

Of course, whether the requested attorneys' fees are calculated and evaluated under the "percentage of fund" or "lodestar/multiplier" method, or both, a reviewing court must also take into account a number of additional quantitative and qualitative factors in order to place each proposed award in proper context.   In the Sixth Circuit, Courts apply the "*Ramey*" factors when considering the prospective reasonableness of a fee award in each settlement.   These factors are:

(1)   The value of the benefit rendered to the class;

(2)   Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

(3)   Whether class counsel's services were undertaken on a contingent fee basis;

(4)   The value of the services on an hourly basis;

(5)   The complexity of the litigation; and,

(6)   The professional skill and standing of counsel on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir 1974).

**1.   The Value of the Benefit Rendered to the Class**

The proposed settlement is clearly beneficial to the Class.   Pursuant to the Parties' Settlement Agreement, the Class will obtain an immediate and certain benefit of $5.25 million. *Cf. Rankin*, 2006 WL 1791377, at *2.   This $5.25 million fund is an excellent result for Settlement Class members, who number at least seventeen thousand.   The Settlement Class is

15

comprised of all participants and beneficiaries of the Plans during the Settlement Class Period (defined as October 21, 2004 through March 6, 2009). Thus, many participants of the Plans, current and former, will receive a significant financial benefit – without any further delay. This is no small feat given the obstacles – as detailed below and explained more fully in the Final Approval Mem. – facing Class Counsel in this case.

"Courts routinely recognize that settlements never equal the full value of the loss claimed by plaintiffs." *UAW v. Gen. Motors Corp.*, No. 05-CV-73991, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006). Indeed, "[c]lass counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiff class." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983). Here, the benefit reached for the Plan and its participants is significant in light of the risks. Defendants would have surely raised compelling arguments during the course of this litigation through summary judgment and trial, if necessary. For instance, the existence of causation and damages were likely to prove extremely contentious, with powerful arguments on both sides. Defendants would likely have raised the complex issue of determining the appropriate points to begin and end the Class Period, including arguing that it should either begin and/or end at a point that would make proving damages much more difficult, if not impossible.

In this matter, the Class Period alleged in the Complaint extended to the present. It was only during negotiations of the Settlement that the Parties selected an end date for the Class Period. This is significant because where the proposed class period extends to the present, and although a class may be certified in such instance, by the end of discovery Plaintiffs would have had to have chosen an imprudence end-date. *See, e.g.*, *In re Schering Plough Corp.*, No. 03-CV-1204, 2008 WL 4510039, at *5 (D.N.J. Sept. 30, 2008) ("the parties do not yet have at their

disposal a workable measure of when the stock was in fact imprudent because 'merits based' discovery has not begun."). Choosing an end-point, and then defending it, would have posed additional challenges to the Plaintiffs. *See Summers v. State Street*, 453 F.3d 404, 411 (7th Cir. 2006) ("So even if the methods of litigation could feasibly determine the point at which the ESOP trustee should sell in order to protect the employee-shareholders against excessive risk, the plaintiffs have made no effort to establish that point.").

This case presented additional unique problems regarding establishing Defendants' liability. Specifically, it would be difficult to establish the fiduciary breach liability of Defendants here where they had actually taken protective measures for the Plan and its participants as the industry in which Lear operated started experiencing difficulty in the last few years. For instance, Lear implemented a 15% cap on Plan participant contributions to the Lear Stock Fund in the Plan in December 2005 (for new hires) and February 2006 (for existing employees). The 15% cap ended on October 31, 2007, at which point the 15% limit dropped to 0% (*i.e.*, the Lear Stock Fund was frozen to contributions at that time). The freeze on contributions to the Lear Stock Fund, which was implemented on October 31, 2007, froze the Lear Stock Fund with respect to both salary deferral contributions and transfers from other plan funds.[12] In light of these steps taken by the Company, Defendants would have asserted a fairly compelling argument that they met their fiduciary obligations to the Plan and its participants during the Class Period.

Further, proving damages caused by fiduciary misconduct would have been a painstaking, complex and expensive process, requiring expert assistance and involving myriad

---

[12]  Indeed as of May 1, 2009, the Lear Stock Fund ceased completely to be an investment option under the Plans and by that time all assets in the Lear Stock Fund were divested.

calculations to enable the fact-finder to determine the effect of the alleged imprudence. Here, it was far from settled that Plaintiffs would succeed in proving damages exceeding the proposed Settlement amount. There was thus a very real possibility of the Plan and Class receiving no recovery after summary judgment and/or trial.

As further testament to the results achieved, despite the sizeable Class there have been only three objections as of the filing of this brief, but none was notable. *See* p. 32of Final Approval Mem. The first objection simply states that the negotiated percentage of attorneys' fees is too large. *See* Ex. D to Ciolko Decl. Summary objections, which lack any explanation or authority, such as the objection here, should be overruled. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D. D.C. 2002) (rejecting broad, unsupported objections because "[they] are of little aid to the Court."). The objector does not make a serious challenge to the more important point before the Court – that is, whether the requested fee reasonable in light of all the circumstances present in this case? As explained in detail in the Fee Memorandum, the fee here is commensurate with the recovery for the Plan.

The second objector simply states that she does not wish to participate in this Settlement. *See* Ex. D to Ciolko Decl. This objection bears further explanation to the Court. It is an objection lodged by Janice Sabol who spoke to Class Counsel after filing her objection. *See* Ciolko Decl., ¶ 69. Ms. Sabol indicated to Class Counsel upon her departure from Lear she signed a release which, she believed, precluded her from bringing any lawsuit against Lear. In keeping with the release that she signed, Ms. Sabol filed her objection stating that she did not wish to bring suit against Lear. On June 10, 2009, Edward W. Ciolko, a partner at BTKMC, spoke to Ms. Sabol to discuss whether or not she could participate in the Settlement. Mr. Ciolko explained that the release signed at the termination of her employment did not preclude her from

participating in the Settlement and, if the Settlement was approved, that she would receive any payment she may be eligible to receive under the Plan of Allocation.  Mr. Ciolko also obtained agreement of this point from defense counsel. *See* Ciolko Decl. at ¶ 69 Ms. Sabol indicated that she understood.  Despite the explanation of why Ms. Sabol filed an objection, her objection still remains a summary objection and should not be given any weight. *See Lorazepam*, 205 F.R.D. at 378.

The last "objection" is utterly unmeritorious.  On April 14, 2009, three "individuals," identified as Charles Milles Manson, Roman Polanski and Jonathan Lee Riches, who, as far as Class Counsel can ascertain, are not members of the Settlement Class, filed a one-page, hand written Motion for Reconsideration and Clarification and Motion to Intervene as Plaintiffs pursuant to FED. R. CIV. P. Rule 24(A)(2) and 24(B) ("Manson Motion").  *See* Ex. D to the Ciolko Decl.  The hand-written motion was signed by "Jonathan Lee Riches."  The Court should disregard the Manson Motion in its entirety as it fails to challenge in any detail the substance of the Settlement or Class Counsel's application for attorneys' fees.

As discussed above, Plaintiffs respectfully submit that the complexities and concomitant risks of establishing damages, when weighed against the substantial and immediate benefits of the proposed $5.25 million Settlement to the Class as a whole, militate in favor of settlement approval.

### 2.    Society's Stake in Rewarding Attorneys who Produce such Benefits in Order to Maintain an Incentive to Others

Public policy militates in favor of encouraging skilled attorneys to bring ERISA suits such as this one.[13]   Private enforcement of the ERISA laws is specifically encouraged in the

---

[13] *Rankin*, 2006 WL 1791377, at *2 ("Protecting retirement funds of workers is of genuine public interest and, thus, supports a fully compensatory fee award.").

statute itself.  *See, e.g.*, 29 U.S.C. § 1132(a) (specifically empowering participants and beneficiaries to bring civil actions to redress violations and/or enforce provisions of ERISA).  By providing incentive for adroit counsel to file and litigate these actions, the common fund doctrine has the desirable effect of promoting compliance with ERISA laws, which, in turn, protects employees and plan participants and encourages individual retirement saving, a valuable public goal.[14]  "[A] financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid."  *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988).  "To make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."  *Eltman v. Grandma Lee's Inc.*, No. 82-CV-1912, 1986 U.S. Dist. LEXIS 24902, at *25 (E.D.N.Y. May 28, 1986).  *See also, In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671, at *39 (S.D.N.Y. October 18, 2004) (noting in awarding attorneys' fees in a similar action that "Lead Counsel has performed an important public service in this action. . . .").[15]

Here, Class Counsel have negotiated a settlement that will create a common fund of $5.25 million plus accrued interest for the benefit of the Class.

### 3.   Whether Class Counsel's Services were Undertaken on a Contingent Fee Basis

Class Counsel's services were undertaken "on a wholly contingency basis."  *Rankin*,

---

[14] *Rankin*, 2006 WL 1791377, at *2 ("[T]here is a public interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases.").

[15] *See also Rankin*, 2006 WL 1791377, at *2 ("Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved") (citing, *inter alia, Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir.1983)).

2006 WL 1791377, at *2.  It is well recognized that an attorney is entitled to an enhanced fee when the compensation is contingent than when it is fixed on a time or contractual basis.  *See, e.g.*, *Crosby v. Bowater Inc. Ret. Plan for Salaried Employees of Great N. Paper, Inc.*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the high fees").  It is not uncommon for courts in this Circuit to award fees of 20 to 50 percent of a common fund in the typical contingent case.  *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) (common fund is "typically 20 to 50 percent of the Fund"); *Kogan v. Aimco Fox Chase, L.P.*, 193 F.R.D. 496, 503-04 (E.D. Mich. 2000); *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001) ("the range of reasonableness has been designated as between twenty to fifty percent of the common fund"); *see also Manual* § 24 .121 (1995) (noting that most district courts select a percentage in the range from 24% to 30% of the fund).

Even more so than other cases litigated on a contingent basis, all of which contain a degree of risk, the instant case was presented with significant obstacles since its filing.  If the Settlement was not consummated, there was a very real possibility that Class members would receive nothing.  For instance, at summary judgment and trial, Defendants would have likely raised, *inter alia*, the following defenses: (i) Defendants did not owe a fiduciary duty to the Plan participants; (ii) if any duty was found to exist, Defendants clearly complied with their duties under ERISA, including (1) the duty to disclose complete and accurate information and (2) limiting and then removing the Plans' Lear common stock investment; (iii) Lear stock was not an "imprudent" plan investment during the relevant time period in question; and (iv) Defendants did not function as ERISA fiduciaries with regard to Plan investments in Lear stock.  The Court could have found these defenses to have merit.

Moreover, Defendants would have surely raised other compelling arguments during the course of this litigation through summary judgment and trial, if necessary.  For instance, as discussed above, the existence of causation and damages were likely to prove extremely contentious, with powerful arguments on both sides.  Defendants would likely have raised the complex issue of determining the appropriate points to begin and end the Class Period, including arguing that it should either begin and/or end at a point that would make proving damages much more difficult, if not impossible.

In this matter, the Class Period alleged in the Complaint extended to the present.  It was only during negotiations of the Settlement that the Parties selected an end date for the Class Period.  This is significant because where the proposed class period extends to the present, and although a class may be certified in such instance, by the end of discovery Plaintiffs would have had to have chosen an imprudence end-date.  *See, e.g.*, *In re Schering Plough Corp.*, No. 03-CV-1204, 2008 WL 4510039, at *5 (D.N.J. Sept. 30, 2008) ("the parties do not yet have at their disposal a workable measure of when the stock was in fact imprudent because 'merits based' discovery has not begun.").  Choosing an end-point, and then defending it, would have posed additional challenges to the Plaintiffs.  *See Summers v. State Street*, 453 F.3d 404, 411 (7th Cir. 2006) ("So even if the methods of litigation could feasibly determine the point at which the ESOP trustee should sell in order to protect the employee-shareholders against excessive risk, the plaintiffs have made no effort to establish that point.").

This case presented additional unique problems regarding establishing Defendants' liability.  Specifically, it would be difficult to establish the liability of Defendants here where they had actually taken protective measures for the Plan and its participants as the industry in which Lear operated started experiencing difficulty in the last few years.  As noted above, Lear

implemented a 15% cap on contributions to the Lear Stock Fund in the Plan in December 2005 (for new hires) and February 2006 (for existing employees). The 15% cap ended on October 31, 2007, at which point the 15% limit dropped to 0% (*i.e.*, the Lear Stock Fund was frozen to contributions at that time). The freeze on contributions to the Lear Stock Fund, which was implemented on October 31, 2007, froze the Lear Stock Fund with respect to both salary deferral contributions and transfers from other plan funds. In light of these steps taken by the Company, Defendants would have asserted a fairly compelling argument that they met their fiduciary obligations to the Plan and its participants during the Class Period.

Moreover, recent Circuit-level analogous case law developments have strengthened positions favorable to Defendants. For example, in *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008), the Fifth Circuit affirmed the dismissal of an analogous action on summary judgment, strengthening the presumption of prudence argument and accepting the defendants' argument that they might be excused from meeting any ERISA-specific disclosure requirements in order to avoid liability for "insider trading." Notably, the Seventh Circuit recognized that a fiduciary who sells company stock too quickly may be sued for taking that action. *See Summers v. State Street Bank & Trust Co.,* 453 F.3d 404, 411 (7th Cir. 2006) ("Of course, if State Street had sold earlier and the stock had then bounced back, as American Airlines' stock did, State Street might well have been sued by the same plaintiffs ...."). This "damned if you do, damned if you don't" argument would merit consideration in this case as the litigation moved forward.

Other significant hurdles faced Plaintiffs. For example, in *In re Huntington Bancshares Inc. ERISA Litig.*, No. 08-CV-0165, 2009 WL 330308 (S.D. Ohio Feb. 9, 2009), the district court for the Southern District of Ohio dismissed breach of fiduciary duty claims, like those asserted in the Action, challenging defined contribution plan investments in employer stock. *Huntington*

supports the argument, which Defendants surely would make on their summary judgment motion, that it cannot be an abuse of discretion to maintain company stock as a 401(k) option in the absence of "something akin to a 'red flag' of misconduct." *Id.* at *8 (internal quotation omitted). Further, the court in *Huntington* deemed the stock price decline insufficient to maintain a claim for breach of fiduciary duty because Huntington's stock price moved in tandem with the other regional banks over the class period. *Id.*

Lastly, while there are numerous decisions addressing Federal Rules of Civil Procedure 12 and 56 motions in this type of action, to date, to the best of Class Counsel's knowledge, only four ERISA breach of fiduciary duty "company stock" class actions have gone to trial[16] – each case resulting in a defense verdict. *See Brieger v. Tellabs*, No. 06-CV-1882, 2009 WL 1565203 (N.D. Ill. June 1, 2009) (district court ruled that defendants did not breach ERISA mandated fiduciary duties by continuing to offer company stock as plan investment option); *Nelson v. IPALCO Enterprises, Inc..* 480 F. Supp. 2d 1061 (S.D. Ind. 2007), *affirmed*, 512 F.3d 347 (7th Cir. 2008) (7th Circuit upheld district court's determination that Defendant fiduciaries did not breach their fiduciary duties under ERISA by failing to remove company stock as a plan investment option); *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006), *affirmed,* 497 F.3d 410 (4th Cir. 2007) (Fourth Circuit affirmed the district court's ruling that defendants did not  breach ERISA mandated fiduciary duties by continuing to offer company stock as plan investment option.); *Landgraff v. Columbia Healthcare Corp.* No. 98-CV-0090, 2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000), *affirmed,* 30 Fed. Appx. 366 (6th Cir. 2002) (district court ruled that defendants did not breach ERISA mandated fiduciary duties by

---

[16] *See In re Delphi Corp Securities, Derivative and "ERISA" Litig..*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("Indeed, as the ERISA Lead Plaintiffs acknowledge, trials on the ERISA issues presented have been few and

continuing to offer company stock as plan investment option). Thus, it is not speculation to assert that the risks of continuing to trial were high.

While Plaintiffs' Counsel are confident in their ability to establish liability and distinguish this matter from the potentially harmful cases mentioned above, they recognize that the road ahead to and through trial was one fraught with dangers – known and unknown. *Rankin*, 2006 WL 1791377, at *2; *see also, In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1260-61 (D. Kan. 2006) ("[N]umerous serious questions of law and fact placed the ultimate outcome of this case in real doubt . . . to put it mildly, it would have been interesting to see if and how plaintiffs could have survived the summary judgment phase").

### 4.     The Value of the Services on an Hourly Basis

In this Circuit, the lodestar figure is used to confirm the reasonableness of the percentage of the fund award. *Bowling*, 102 F.3d at 777, 780. Class Counsel have spent over 3,209.25 combined hours in prosecuting this case on behalf of the Class. Although Class Counsel did everything in their power to keep costs and fees, including attorneys' time, to a minimum, the complexity of this Action required a significant amount of work by a number of attorneys and non-attorney support staff. As much as possible, Class Counsel managed the assignment of work in this case to avoid unnecessary duplicative or overlapping work. Where appropriate, associates and junior lawyers, and paralegals with lower hourly rates, were delegated work.

Based primarily on historical rates, Class Counsel's combined lodestar is approximately $1,566,859.50. The declarations of each individual Class Counsel establishes the reasonableness

---

far between and the few decisions on summary judgment and adjudications on the merits in this area demonstrate the heavy burden that Plaintiffs might ultimately have if the case were not resolved by settlement.")

of their rates and expenses and makes clear that Class Counsel was engaged in significant work during the litigation.

As an initial matter, as described above, from early December 2007 through mid-February 2008, the Parties engaged in motion practice concerning the Company's proposed implementation of a new document retention policy that threatened to destroy millions of documents.  Eventually, as a result of Plaintiffs' efforts, the Parties agreed that Defendants would delay implementing their new document retention policy until after the close of fact discovery, effectively protecting millions of pages of documents from immediate destruction. After concluding those efforts, Plaintiffs moved diligently and served Defendants with written discovery, served non-party subpoenas, and scheduled depositions of Defendants and non-parties.  During this time, Plaintiffs also responded with Answers and Objections to Defendants' Requests for Production of Documents and First Set of Interrogatories.  Plaintiffs, with the aid of Counsel, spent significant time in responding to these extensive Interrogatories.

During the course of discovery, tens of thousands of pages of documents were produced by Defendants which Plaintiffs, through their Counsel reviewed.   Throughout the discovery process, Plaintiffs also served subpoenas *duces tecum* on the Plans' two trustees, Reliance Trust Company and Northern Trust Company, as well as upon the auditor for Lear and the Plans, Ernst & Young LLP.  Plaintiffs also served FED. R. CIV. P. 30(b)(2) and (6) Notices on Lear's principal customers: Ford, GM, and Chrysler, LLC   as well as upon certain of Lear's suppliers. Additionally, in late June 2008, counsel for Defendants deposed all four Named Plaintiffs.  Class Counsel along with Named Plaintiffs prepared extensively for these depositions.

Moreover, Class Counsel extensively reviewed publicly available documents, hundreds of pages of Plan-related documents, including master Plan documents, Summary Plan

26

Descriptions, and Summary Material Modifications, documents filed with the SEC and publicly available analysts reports as well as materials available from other Company litigation.  All of this information served to augment the significant amount of information Plaintiffs had accumulated from their own investigation.  Plaintiffs' Counsel also drew on their extensive knowledge of ERISA law with respect to fiduciary duties relating to the investment of company stock in defined contribution plans to plead the case as strongly as possible, including with reference to the factual results of their investigation.

Class Counsel also opposed Defendants' motion to dismiss and participated in contentious discovery.  As noted above, on March 31, 2008, Defendants filed a motion to compel Plaintiffs to respond fully to their written discovery requests.  Plaintiffs vigorously contested this motion.  As a result of this effort, on June 5, 2008, this Court granted in part and denied in part Defendants' Motion to Compel.  Pursuant to the June 5, 2008 Order, Plaintiffs prepared and served supplemental responses to Defendants' Interrogatories.  .

Class Counsel also prepared for what would have been a hotly contested class certification process.  As noted above, Plaintiffs' Motion to Certify was pending when the proposed Settlement was reached.  Defendants had not yet responded to the Motion to Certify at the time the proposed Settlement was reached, but undoubtedly Defendants would have vigorously opposed the Motion to Certify.  As such, Class Counsel to necessary steps to make sure they were prepared for that possible eventuality.

Further, even after a proposed Settlement had been reached, the Parties continued with several months of further negotiation regarding the specific terms of the Settlement Agreement, the scope of the release, the definition of the class, and other important and necessary terms of the proposed Settlement.  At all times, counsel for the Parties engaged in spirited negotiations

and kept the Court and the mediator informed of their progress.  In short, Class Counsel's "efforts in posturing this case for trial . . . played a role in spurring the settlement, [and] produced a substantial payout to the class." *In re Newbridge Networks Sec. Litig.*, No. 94-CV-1678, 1998 U.S. Dist. LEXIS 23238, at *11 (D.D.C. Oct. 22, 1998).

The extent of Class Counsel's time spent litigating this case should also be evident in the descriptions of their work in the analysis of the other Sixth Circuit factors analyzed above and below and in the Ciolko Declaration and Final Approval Mem.  Moreover, Class Counsel will continue to work for the Class to oversee administration of the Settlement and Plan administrator, deal with appellate issues, if any, and communicate with Class members.  This work represents a significant portion of time that Class Counsel will spend for the Class that is not reflected in the lodestar calculation described below.

### 5.    The Complexity of the Litigation

The complexity of the issues involved in this litigation as well as the duration of time it has taken to litigate this action favors an award in the amount requested.  ERISA class actions, in addition to being relatively novel, are also extremely complex and involve the intricate application of a decidedly complicated statute.  As one court recently noted, "ERISA law is highly complex and quickly-evolving area of the law." *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-CV-00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007); *see also, Sprint,* 443 F.Supp.2d at 1270 ("The applicable law is complex, unsettled, and in a rapid state of development").  The complex nature of this type of case weighs in favor of settlement and the requested fees.  In *In re Global Crossing Sec. & ERISA Litig.*, the court noted:

> The ERISA cases would pose additional factual and legal issues. Fiduciary status, the scope of fiduciary responsibility, the appropriate fiduciary response to the Plans' concentration in company stock and [company] business practices would be issues

> for proof, and numerous legal issues concerning fiduciary liability in connection with company stock in 401(k) plans remain unresolved. These uncertainties would substantially increase the ERISA cases' complexity, duration, and expense – and thus militate in favor of settlement approval.

225 F.R.D. 436, 456 (S.D.N.Y. 2004).

Some of the complex legal issues involved in this matter included: (i) what individuals and entities qualified as fiduciaries of the Plans and when they so qualified; (ii) what duties did such fiduciaries have to the Plans; (iii) what obligations did such fiduciaries have to the participants of the Plans; (iv) to what extent may each fiduciary be held liable for the losses incurred by the Plans; (v) how to properly measure damages and (vi) whether and to what extent members of the Class could be charged with knowledge of the actions which allegedly caused Lear stock to be imprudent during the Class Period.

Were the Action to continue, merits discovery will resume full bore, with written discovery, voluminous document production and review, numerous depositions and expert reports and discovery as a prelude to dispositive motions, trial, and likely appeals, thus delaying final resolution of Plaintiffs' claims for years. These efforts will consume monumental time and expense by both the parties as well as the precious resources of this Court, with Plaintiffs and the Class possibly obtaining a recovery below the proffered settlement, or no recovery at all.

### 6. The Professional Skill and Standing of Counsel on Both Sides

This Settlement was achieved by Class Counsel – who include some of the preeminent ERISA class action attorneys in the country – with decades of experience in prosecuting and trying complex actions.[17] Lead Class Counsel Barroway Topaz Kessler Meltzer & Check, LLP (BTKMC) is well-regarded nationally for their successful representation of clients in complex

---

[17] *See* the firm resumes of each individual Class Counsel, attached to Ciolko Declaration as Exhibits F-L.

ERISA class action matters. BTKMC's ERISA litigation department is one of the foremost in the country representing employees as Lead or Co-Lead counsel in numerous ERISA breach of fiduciary class actions directly analogous to the instant litigation.[18] Acknowledging the firm's history and track record of impressive results, courts have not hesitated to appoint BTKMC as class counsel in numerous ERISA breach of fiduciary class actions, directly analogous to the instant matter.[19]

BTKMC's dedication to prosecute matters on behalf of class members to the fullest is unsurpassed. Indeed, just over a month ago, BTKMC as Co-Lead Class Counsel completed a trial in the *Brieger v. Tellabs, Inc.*, No. 06-CV-01882 (N.D. Ill.) ("*Tellabs*") case discussed above. *Tellabs* was an ERISA "company stock" breach of fiduciary duty class action, similar to this Action. To the best of BTKMC's knowledge, this was only the ***fourth*** such ERISA case to go to trial. *Tellabs* was a case that spanned three years from its inception to the conclusion of trial and required the expenditure of tremendous resources, both financially and personnel-wise.

---

[18] The Court's attention is respectfully referred to the firm biographical data of Barroway Topaz Kessler Meltzer & Check, LLP, attached to the Ciolko Declaration as Exhibit C.

[19] *See, e.g., Ingram v. Health Management Assoc.*, No. 07-CV-00529 (M.D. Fl. June 10, 2009); *In re Lincoln Nat'l Corp. ERISA Litig.*, No. 08-CV-5740 (E.D. Pa. June 4, 2009); *In re 2008 Fannie Mae ERISA Litig.*, No. 09-CV-01350, MDL No. 2013 (S.D.N.Y. May 15, 2009); *In re Constellation Energy, Inc. ERISA Litig.*, No. 08-CV-02662 (D. Md. Jan. 27. 2009); *In Re: Bear Stearns Cos, Inc. Sec., Derivative, and ERISA Litig.*, No. 08-MD-1963, 2009 WL 50132 (S.D.N.Y. Dec. 29, 2008); *In re: SLM Corp. ERISA Litig.*, No. 08-CV-4334 (S.D.N.Y. Sept. 30, 2008); *Dresslar v. Wellpoint, Inc.*, No. 08-CV-00679-DFH-TAB (S.D. Ind. May 22, 2008); *Grosick v. Nat'l City Corp.*, No. 08-CV-00144-PAG (N.D. Ohio Jan. 17, 2008); *Riccio v. Huntington Bancshares Inc.* No. 08-CV-00165-GLF-TPK (S.D. Ohio Feb. 20, 2008); *In re First Am. Corp. ERISA Litig.*, No. 08-CV-01357-JVS-RNB (C.D. Cal. Nov. 16, 2007); *In re Beazer Homes USA, Inc. ERISA Litig.*, No. 07-cv-00952-RWS (N.D. Ga. April 30, 2007); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355 (E.D. Mich. 2006); *In re Lear ERISA Litig.*, No. 06-CV-11735 (E.D. Mich. Apr. 10, 2006); *In re Honeywell ERISA Litig.*, No. 03-CV-1214 (D.N.J. Oct. 22, 2004); *Wilson v. Federal Home Loan Mortgage Corp.*, MDL No. 1584, No. 04-CV-2632 (JES) (S.D.N.Y. Apr. 7, 2004); ); *Koch v. Loral Space & Commc'ns Ltd.*, No. 03-CV-9729 (S.D.N.Y. Dec. 8, 2003); *In re Schering-Plough Corp. ERISA Litig.*, No. 03-CV-1204) (D.N.J. July 30, 2003); *Gee v. UnumProvident Corp.*, No. 03-CV-1552 (E.D. Tenn. Sept. 3, 2003); *In re Raytheon ERISA Litig.*, No. 03-CV-10940-RGS (D. Mass. Mar. 19, 2003); *In re Westar Energy Inc. ERISA Litig.*, No. 03-CV-4032 (D. Kan. Mar. 7, 2003).

Prosecution of *Tellabs* through trial is but one example of the dedication BTKMC employs in every case it handles.

Moreover, in the course of prosecuting ERISA class actions such as this as lead or co-lead class counsel across the country, BTKMC has prepared numerous consolidated pleadings, responded to innumerable motions to dismiss, propounded discovery requests and reviewed millions of pages of plan-related documents and related merits discovery. Indeed, the firm's litigation efforts have resulted in favorable and oft-cited opinions in a number of ERISA decisions denying defendants' motions to dismiss or for summary judgment.[20]

BTKMC has also prevailed in appeals before the First, Third and Ninth Circuits resulting in seminal decisions that have helped shape this still relatively new area of ERISA jurisprudence. For instance, in *Evans v. Akers,* 534 F.3d 65 (1st Cir. 2008) BTKMC successfully argued that former employees who have received lump sum distributions of the entire balance of their retirement plan have standing to sue under ERISA. *See also, In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005) (finding that a subset of participants in a defined contribution plan had standing to sue on behalf of the plan pursuant to ERISA § 502(a)(2)); *In re*

---

[20] *See, e.g., Brieger v. Tellabs, Inc.* No. 06-CV-01882 (N.D. Ill. Mar. 16, 2009); *In re Ford Motor Co. ERISA Litig.*, No. 06-CV-11718, 2008 WL 5377955, at *3 (E.D. Mich. Dec. 22, 2008); *In re First Am. Corp. ERISA Litig.*, No. 08-CV-01357, 2008 WL 5666637 (C.D. Cal. July 14, 2008); *In re Diebold ERISA Litig.,* No. 06-CV-0170, 2008 WL 2225712 (N.D. Ohio May 28, 2008); *Brieger v. Tellabs, Inc.*, 473 F. Supp. 2d 878 (N.D. Ill. 2007); *In re Lear ERISA Litig.*, No. 06-CV-11735 (S.D. Mich. Apr. 10, 2006); *In re: Merck & Co., Inc. Sec. Derivative & ERISA Litig.*, No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006); *Woods v. Southern Co.*, 396 F. Supp. 2d 1351 (N.D. Ga. 2005); *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-CV-4743, 2005 WL 1662131 (N.D. Cal. July 14, 2005); *In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*, No. 02-CV-8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005); *Wilson v. Federal Home Loan Mortgage Corp.*, MDL No. 1584, No. 04-CV-2632 (S.D.N.Y. Feb. 7, 2005); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461 (S.D.N.Y. 2005); *Gee v. UnumProvident Corp.*, No. 03-CV-0147, 2005 WL 534873 (E.D. Tenn. Jan. 13, 2005); *In re Honeywell Intern. ERISA Litig.*, No. 03-CV-1214, 2004 WL 3245931 (D.N.J. Sept. 14, 2004); *In re ADC Telecomms., Inc. ERISA Litig.*, No. 03-CV-2989, 2004 WL 1683144 (D. Minn. July 26, 2004); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-CV-8324, 2004 WL 407007 (N.D. Ill. March 3, 2004); *Falk v. Amerada Hess Corp.*, No. 03-CV-2491 (D.N.J. May 10, 2004); *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970 (C.D. Cal. 2004); *In re CIGNA Corp. ERISA Litig.*, No. 03-CV-00714 (E.D. Pa. Aug. 2, 2004); *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361 (N.D. Ga. 2004).

*Syncor ERISA Litig.,* 516 F.3d 1095 (9th Cir. 2008) (overturning district court's grant of summary judgment).

In addition to its extensive litigation experience, the firm has also successfully engaged in extensive, intricate and successful settlement negotiations involving complex legal and factual issues involving ERISA claims, including court-ordered mediations. These negotiations and mediations have resulted in large recoveries for affected classes of Plan participants. *See In re AOL ERISA Litig.*, 02-CV-8853 (S.D.N.Y.) (as Co-Lead Counsel, BTKMC helped obtain a $100 million settlement); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) (settlement providing injunctive relief and $78 million payment for plan losses); *In re Bristol-Myers Squibb Co. ERISA Litig.*, No. 02-CV-10129 (LAP) (S.D.N.Y.) (as Co-Lead Counsel, achieved a cash recovery of $41.22 million and significant structural relief regarding how the 401(k) plans at issue are administered valued at up to $52 million); *Lewis et al. v. El Paso Corp.*, No. H-02-4860 (S.D. Tex) (as sole Lead Counsel, obtained a $17 million settlement); *In re Honeywell Int'l ERISA Litig.*, No. 03-CV-1214 (DRD) (D.N.J. 2004) (as sole Lead Counsel, achieved a $14 million recovery as well as significant structural relief regarding the retirement plan's administration and investment of its assets).

Plaintiffs' Executive Committee, each of whom is well-qualified and experienced in prosecuting complex actions such as this case, also greatly assisted in producing the results achieved in this matter. [21] As set forth in its accompanying firm resume, Squitieri & Fearon, LLP has significant experience handling class actions, including ERISA class actions, as well as other complex litigation and is well-versed in the law of ERISA and class actions. Its attorneys

---

[21] The Court's attention is respectfully referred to the firm biographical data of the other Class Counsel members which are attached to the Ciolko Decl. as Exs. F through L.

have decades of experience in class action litigation and have successfully represented classes of investors and plan participants in similar claims in courts throughout the country.

Additionally, Kahn Swick & Foti, LLC has extensive experience in complex litigation. For example, KGS is currently serving, or has successfully prosecuted, as lead or co-lead counsel in numerous shareholder's derivative and class action cases including: *In re Xethanol Corp. Sec. Lit.*, No. 06-CV-10234 (S.D.N.Y.), *In re: Pixelplus Co., Ltd.*, No. 06-CV-02951 (S.D.N.Y.). Further, Motley Rice LLC attorneys have substantial experience in the prosecution of shareholder, securities, and other class actions as well as a wide variety of complex litigation.

Lastly, Stephen Wasinger specializes his practice in all manner of complex civil litigation, including securities, ERISA, consumer and antitrust litigation. Mr. Wasinger tried major cases throughout the United States, including complex securities, ERISA and antitrust cases throughout the United States.

The quality of opposing counsel is also relevant to the evaluation of class representation. *See, e.g.*, *Ramey*, *supra* 508 F.2d at 1196; *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsel's work"). Here, Defendants were represented vigorously by experienced and able counsel from a prominent firm with ample resources. Counsel for Defendants, including Michael Roche of Winston & Strawn, LLP, one of the most well-respected law firms in the United States, have relevant expertise and experience in complex litigation, including actions brought under ERISA. The fact that Class Counsel was able to negotiate such a favorable settlement when Defendants were being represented by such a high caliber of legal advocates militates in favor of granting this Motion.

Accordingly, Plaintiffs respectfully submit that Class Counsel's extensive and broad

based experience litigating and successfully resolving ERISA breach of fiduciary duty cases, weighs in favor of approving the fee request here.

### D.   Awards In Similar Cases

The reasonableness of Class Counsel's fee request is also supported by awards in similar cases. Throughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-40% of a common fund. *In re Visteon Corp. ERISA Litig.,* No. 05-CV-71205 (E.D. Mich. Mar. 9, 2007) (awarding 28%) (Attached to Ciolko Decl. as Ex. N); *In re Cincinnati Microwave Inc. Sec. Litig.,* Consolidated Master File No. C-1-95-905, Order and Final Judgment (S.D. Ohio Mar. 21, 1997) (awarding 30%); *Meyers v. Abbott Labs.,* No. 97-C-612, Memorandum (5th Cir. Ct. Davidson County, Tenn., Mar. 26, 1998) (awarding 25%); *Adams v. Standard Knitting Mills, Inc.,* [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,377 (E .D. Tenn. Jan. 6, 1978) (35.8% award).

Nationwide, an award of one-third of a common fund created for the benefit of an aggrieved class in a large, complex class action is recognized as an appropriate benchmark. *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306-07 (3d Cir. 2005) (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71%" with a median value that "turns out to be one-third").

Class Counsel's request of approximately $1.575 million in attorneys' fees represents 30% of the common fund created by the Settlement of this Action and is in line with both awards in complex class actions generally, *see above*, and those approved as part of settlements of analogous breach of fiduciary duty "company stock" cases that have settled in recent years. *See, e.g., In re Xerox Corp. ERISA Litig.,* No. 02-CV-1138 (D. Conn. Apr. 14, 2009) (Order granting motion for 30% of settlement amount as Attorneys' Fees) (Attached to Ciolko Decl. as Ex. N);

*Mehling v. New York Life Insurance Co., et al.* 248 F.R.D. 455, 464, 468 (E.D. Pa. 2008) (granting 30% of common fund); *Spivey v. Southern Company*, No. 04-CV-1912-RWS (N.D. Ga. August 11, 2007) (Order and Final Judgment) (awarding 27.5% of common fund); *Koch v. Dwyer*, No. 98-CV-05519 (S.D.N.Y. May 7, 2002) (awarding 30% of $6.4 million common fund); *In re ADC Telecomm., Inc.*, No. 03-CV-2989 (D. Minn. Oct. 16, 2006) (awarding fee of 30% of $3.25 million settlement); *In re Westar Energy, Inc., ERISA Litig.*, No. 03-CV-4032 (D. Kan. July 27, 2006) (awarding 30% of $9.25 million settlement); *Kling v Fidelity Mgmt. Trust Co.*, No. 01-CV-11939 (D. Mass. June 29, 2006) (awarding 30% of $10.85 million settlement fund); *In re CMS ERISA Litig.*, Master File No. 02-72834 (E.D. Mich June 27, 2006)) (Order and Final Judgment granting 28.5% of common fund award); *In re Mirant Corp. ERISA Litig.*, No. 03-CV-1027-RWS (N.D. Ga. Nov. 16, 2006) (Order of Final Judgment granting 27.5% of common fund award); *In re Household Int'l, Inc. ERISA Litig.*, No. 02-CV-07921 (N.D. Ill. Nov. 22, 2004) (order granting approval of Settlement Agreement calling for attorneys fees of 30% of settlement).

### E.      Lodestar Cross-Check And Multiplier

A lodestar cross-check is a "suggested practice." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 735 (3d Cir. 2001), utilized by some courts as a second layer of review regarding requested attorneys' fees in these type of cases. *Cf. Rawlings v. Prudential-Bache Properties,* 9 F.3d 513, 516 (6th Cir. 1993) (noting that "[t]he lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved"). Once the lodestar is calculated, courts often approve a "multiplier" to the actual fees incurred, especially in a cutting edge, large and complex actions such as the instant one, in light of litigation risks and counsel's efforts in achieving a settlement. *See In re Union Carbide Corp.*

*Consumer Products Business Sec. Litig.*, 724 F. Supp. 160, 164 (S.D.N.Y. 1989) ("[c]ontingent fee risk is the single most important factor in awarding a multiplier"). "Enhancing the lodestar with a separate multiplier" has been specifically recognized by courts across the nation, including the Sixth Circuit, as a "means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Rawlings*, 9 F.3d at 516.

Class Counsel's aggregate lodestar to date is a very modest proposed "multiplier" of approximately 1.021 (multiplying hours worked for each attorney and staff person by their respective rates – all of which are in line with those charged by national complex class action law firms- and including expenses). More specifically, Class Counsel has employed 3,209.50 hours and $1,543,179.50 in attorney and professional staff "lodestar" in prosecuting and achieving settlement of this Action. Given Class Counsel's requested fee award of $1,575,000.00, the resulting "lodestar multiplier crosscheck" is 1.02062009 – total award requested/total lodestar. Obviously, as noted above, this lodestar is inherently conservative as it does not reflect the additional work Class Counsel will undertake in implementing the Settlement; hence the multiplier will shrink further. Regardless, the lodestar above is inherently reasonable and quite modest under Sixth Circuit standards. *See, e.g., Manners v. Am.Gen. Life Ins. Co.*, No. 98-CV-266, 1999 U.S. Dist. LEXIS 22880, at * 93 (M.D. Tenn. Aug. 11,1999) (awarding multiplier of 3.8 and observing that "[t]his multiplier is well within the range of multipliers for similar litigations, which have ranged from 1-4 and have reached as high as 10"); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (finding that multiplier in "2.4-2.6 range" was "reasonable and conservative when compared to similar cases," and noting multipliers of 4 and 5 in other cases).

Moreover, lodestar multipliers of this magnitude (and quite often much higher) are routinely awarded in analogous complex ERISA class actions. *See, e.g.*, *In re Lucent Technologies, Inc. Securities Litig.*, 327 F. Supp. 2d 426, 450 (D.N.J. 2004) (concluding that a multiplier "between one and four . . . is appropriate"). Indeed, the requested fee results in a lower multiple than fee awards to class counsel in numerous other directly analogous settlements. *See, e.g.*, *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-CV-0187, 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007) (approving a fee award resulting in a multiplier of 1.6); *Global Crossing*, 225 F.R.D. at 470 (approving a fee award resulting in a multiplier of 2.6); *In re Mirant Corp. ERISA Litig.*, Civil Case No. 03-CV-1027-RWS (N.D. Ga.) (Nov. 16, 2006 approving fee award resulting in 2.47 multiplier); *In re Honeywell ERISA Litig.*, No. 03-CV-1214 (D.N.J. 2006) (approving multiplier of 3.7); *Kolar v. Rite Aid Corp*, No. 01-CV-1229, 2003 U.S. Dist. LEXIS 3646, at *5 (E.D. Pa. Mar. 11, 2003) (4.5 multiplier); *In re Household Int'l, Inc. ERISA Litig.*, No. 02-CV-07921 (N.D. Ill. filed Nov. 22, 2004) (multiplier equaling 4.65).

Considering the circumstances of this litigation, this multiplier – similar to those recently approved by courts in this Circuit – is more than fair. Accordingly, the modest lodestar in this matter strongly supports the reasonableness of the fee request.

### F.     Reimbursement And Payment of Class Counsel's Expenses

It is axiomatic that lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax. *Telectronics*, 137 F. Supp. 2d at 1036 ("Counsel contributed to the creation of the Settlement Fund, and accordingly, are entitled to receive a reimbursement of their out-of-pocket expenses in the [requested] amount"). Class Counsel, in the prosecution of this complex case,

expended at least $57,045.49. These expenses reflect costs expended for purposes of prosecuting this litigation, including substantial fees for experts; deposition costs; and travel expenses. Reimbursement of similar expenses is routinely permitted. *See e.g.*, *Oh v. AT & T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding the following expenses reasonable and appropriately incurred – "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express services, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund-*pro hac vice*").

G.     Case Contribution Awards For Named Plaintiffs

Class Counsel respectfully requests that the Court approve the payment of Case Contribution awards in an amount of $10,000 to each Named Plaintiff. The enforcement of the ERISA laws by private litigants is in the interest of the public and should be encouraged. *See, e.g.*, *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974). "Numerous courts have recognized that named plaintiffs in class actions are entitled to individual awards as compensation for their time and effort in asserting the interests of the class, meeting discovery and other litigation responsibilities, and working with counsel to advance the interests of the class." *Feerer v. Amoco Prod. Co.*, 242 F.3d 1259 (10th Cir. 2001) (citations omitted).[22]

In the instant action, the Named Plaintiffs stepped forward and pursued the Class's interests by filing suit on behalf of the members of the Settlement Class and on behalf of the Plans undertaking the responsibilities attendant with serving as named plaintiffs. They provided documents and information in response to discovery requests, aided Class Counsel in describing

---

[22] *See also, Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) ("The propriety of allowing modest compensation to class representatives seems obvious . . . .").

relevant facts about Lear, the Plans and information supporting the claims presented in the Complaint, sat for deposition and helped make strategic decisions, including negotiation and approval of the Settlement's terms.  In short, the Named Plaintiffs contributed significantly to the prosecution of this action.

Indicative of the inherent propriety of the requested case contribution award, the amounts requested here are easily in line with amounts typically awarded in analogous cases.  *See, e.g. Rankin v. Rots*, No. 02-CV-71045 (E.D. Mich. June 27, 2006) (awarding $10,000 to Class Representative); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 467 (E.D. Pa. 2008) (granting plaintiffs' case contribution awards of $15,000 and $7,500); *In re Household Int'l, Inc. ERISA Litig.,* No. 02-CV-7921 (N.D. Ill. Nov. 22, 2004) (awarding $10,000 to each Class Representatives).   The case contribution award amounts requested here are also similar to amounts awarded in other class action litigation.  *See also, Berger v. Xerox Corp. Ret. Income Guarantee Plan,*  No. 00-CV-584, 2004 WL 287902, at *3 (S.D. Ill. Jan. 22, 2004) (awarding named plaintiffs incentive fees of $20,000 each for their time and effort in pursuing the litigation); *In re Remeron Direct Purchaser Antitrust Litigation,* No. 03-CV-0085, 2005 WL 3008808, at *17-18 (D.N.J. Nov. 9, 2005) (granting incentive awards to two named plaintiffs that totaled $60,000.00, and citing *In re Linerboard Antitrust Litig.,* MDL No. 1261, 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004) (approving $25,000 to each representative of the classes); *Yap v. Sumitomo Corp. of America,* No. 88-CV-700, 1991 WL 29112, at *9 (S.D.N.Y. Feb. 22, 1991) ($30,000 incentive awards to the named plaintiffs); *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 300 (N.D. Cal. 1995) ($50,000 incentive award to named plaintiff); *In re Dun & Bradstreet Credit Services Customer Litig.,* 130 F.R.D. 366, 373-74 (S.D. Ohio. 1990) (two incentive awards of $55,000 and three incentive awards of $35,000 [settlement

of $18 million]);.

For all of these reasons, Class Counsel submit that the requested Case Contribution awards are both appropriate and reasonable.

## IV.   CONCLUSION

For all of the foregoing reasons, Class Counsel respectfully request that the Court award them attorneys' fees in the amount of $1.575 million and expenses in the amount of $ 57,045.49 and approve Case Contribution awards to each of the Named Plaintiffs in the amount of $10,000 each.

Dated: June 15, 2009                          Respectfully submitted,

**BARROWAY TOPAZ KESSLER MELTZER &
CHECK, LLP**

By:  __ /s/ Edward W. Ciolkko_____
     Joseph H. Meltzer
     Edward W. Ciolko
     Mark K. Gyandoh
     James A. Maro
     280 King of Prussia Road
     Radnor, PA 19087
     Tel: (610) 667-7706
     Fax: 610-667-7056

*Lead Class Counsel for Plaintiffs*

Stephen Wasinger (P25963)
**STEPHEN F. WASINGER PLC**
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48073
Tel: (248) 554-6306
Fax: (248) 479-0391

*Liaison Counsel for Plaintiffs*

40

**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
32 East 57th Street
12th Floor
New York, New York 10022
Tel: (212) 421-6492
Fax: (212) 421-6553

**MOTLEY RICE, LLC**
Badge Humphries
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel: (800) 768-4026
Fax: (843) 216-9450

*Plaintiffs' Executive Committee*

**KAHN SWICK & FOTI, LLC**
Kevin Oufnac
650 Poydras Street
Suite 2150
New Orleans, LA 70130

Law Offices of Stuart J. Guber, LLC
Stuart Guber, Esq.
4565 Bastion Drive
Roswell, GA 30075

**GAINEY & MCKENNA**
Thomas J. McKenna
295 Madison Avenue, 4th Floor
New York, New York 10017

**LAW OFFICE OF ALFRED YATES**
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA
Tel: (412) 391-5164
Fax: (412) 471-1033

*Counsel for Plaintiffs*

41

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2009, I electronically filed Motion of Class Counsel for an Award of Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Compensation with the Clerk of the Court using the ECF system which will send notification of such filing to ECF participants.

/s/ Edward W. Ciolko
Edward W. Ciolko
BARROWAY TOPAZ KESSLER MELTZER
& CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706